**Patricia BLAINE, Petitioner,**

v.

**MOFFAT COUNTY SCHOOL DISTRICT RE NO. 1,**
**Respondent.**

**No. 85SC455.**

Supreme Court of Colorado,
En Banc.

Jan. 11, 1988.

Rehearing Denied Feb. 8, 1988.

Skaalerud & Price, George C. Price, Gregory Lawler, Denver, for petitioner.

Thomas C. Thornberry, Craig, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *Blaine v. Moffat County School Dist. RE No. 1*, 709 P.2d 96 (Colo.App.1985), which affirmed an order of the Moffat County School District Board of Education (school board) dismissing the petitioner, Patricia Blaine, from her position as a tenure teacher with the school district. In affirming the school board's order of dismissal, the court of appeals held: (1) that the school board did not violate section 22–63–117(10), 9 C.R.S. (1983 Supp.),[1] when it accepted the hearing officer's findings of evidentiary fact but nonetheless dismissed Blaine over the hearing officer's recommendation of retention; and (2) that the school board did not abuse its discretion when it determined that Blaine's conduct constituted neglect of duty under section 22–63–116, 9 C.R.S. (1987 Supp.). Although we construe section 22–63–117(10) differently than did the court of appeals, we nevertheless reach the same result as that court and accordingly affirm the judgment.

I.

Patricia Blaine was a teacher in the Moffat County school district and had acquired tenure status on May 13, 1982.[2] Blaine's contract with the school district was expressly made subject to all policies, rules, and regulations adopted by the school board. A written policy of the school board prohibited the use or possession of alcoholic beverages by any student during a school sponsored activity.[3] This policy was set out in a teacher's handbook which was distributed to teachers in the district.

In addition to her teaching responsibilities, Blaine's duties included her serving as head cheerleader sponsor for student cheerleaders. Blaine received additional salary compensation from the school district for this added responsibility. From March 3, 1983 to March 5, 1983, Blaine, in her capacity as head cheerleader sponsor, and Betty Campbell, a library clerk and assistant cheerleader sponsor for the school district, accompanied eight female student cheerleaders to a district basketball tournament in Grand Junction, Colorado. While staying in Grand Junction, the cheerleaders occupied two motel rooms, four to each room, and Blaine and Campbell shared a room next to the cheerleaders' rooms.

On March 17, 1983, the school board notified Blaine that it had accepted the recommendation of Charles C. Grove, the superintendent of schools, to review charges of misconduct against Blaine. These charges alleged that during the district basketball tournament in Grand Junction, Blaine, in her capacity as head cheerleader sponsor, neglected her duty to provide for the general health, safety, and welfare of student cheerleaders under her care and violated

---

1. Because the administrative hearing and the review by the school board took place in 1983, we cite to the version of section 22–63–117 that was in effect during those proceedings. The statute was originally enacted in 1967 as part of the Teacher Employment, Dismissal, and Tenure Act of 1967. Ch. 435, sec. 1, § 123–18–17, 1967 Colo.Sess.Laws 976, 981–83. In 1987, section 22–63–117(10) was amended to reflect the change in designation from "hearing officer" to "administrative law judge." Ch. 172, sec. 61, § 22–63–117, 1987 Colo.Sess.Laws 936, 957–59.

2. A "tenure teacher" is "any teacher who has acquired tenure status in a school district pursuant to law." § 22–63–102(11), 9 C.R.S. (1973). Tenure status generally requires continuous employment in a school district for three full academic years, plus reemployment for a fourth academic year. § 22–63–112, 9 C.R.S. (1973 & 1987 Supp.).

3. The written policy stated:
 The Board of Education recognizes that the use and possession of narcotics and dangerous drugs is illegal, and for most students, the possession or use of alcoholic beverages is illegal. No use or possession of dangerous or narcotic drugs or alcoholic beverages by any student upon school property or school sponsored activity will be permitted.
 The Board and its representatives will do everything possible to prevent the use or availability for use of all dangerous or narcotic drugs or alcoholic beverages by students upon school property or school sponsored activity.

district policies in the following particulars: (1) Blaine approved the purchase of alcoholic beverages by the students and permitted them to hold a party in the motel; (2) Blaine allowed the student cheerleaders, including those under age, to consume alcoholic beverages in the motel; and (3) Blaine fraternized with the student cheerleaders while they were drinking alcoholic beverages, and drank with them herself. Blaine requested a hearing on the charges. A hearing officer was selected pursuant to section 22–63–117(5), 9 C.R.S. (1983 Supp.), and on September 19, 1983, the hearing officer conducted a hearing at which the testimony of several witnesses was presented.

Charles Grove testified that his investigation of the incident revealed that Blaine had given the cheerleaders permission to have a party and drink beer. He testified that Blaine admitted to him that the cheerleaders drank beer in her presence and that she drank beer with them. Although the superintendent testified that he considered Blaine a good teacher, he was of the opinion that Blaine's conduct in drinking beer with the cheerleaders had a harmful effect on the students and the extracurricular activities of the school district.

Blaine testified that after arriving at the motel she ordered pizza for herself, Betty Campbell, and the cheerleaders. She also ordered beer for herself and drank the beer in her motel room while she and the students were eating the pizza. On this occasion, she did not offer any beer to the students. Later in the evening, when Blaine and Campbell were in their room, they heard a noise from one of the cheerleaders' rooms. Campbell went to investigate, and a few minutes later Blaine decided to look into the situation. When Blaine entered the cheerleaders' room, she discovered several of the cheerleaders drinking beer and smoking.

Blaine admitted that she was aware of the district policy prohibiting drinking during school sponsored activities and knew that what the cheerleaders were doing was wrong. She also realized that she should do something about the situation, but did not know precisely what to do. According to Blaine, she did not want to make a scene and throw the beer away when it was almost gone anyway. Consequently, she remained in the room and participated in a drinking game with the cheerleaders.

Blaine further testified that she told the cheerleaders that they could be suspended or expelled for drinking during a school sponsored activity and that she and Campbell could be dismissed from their positions. She stayed with the cheerleaders for the remainder of the evening, stating that her sole concern was keeping them "safe, supervised and in their room." Blaine conceded in her testimony that she exercised poor judgment and that if confronted again with a similar situation she would confiscate the beer and report the incident to her superior.

Three of the cheerleaders also testified at the hearing. One of them stated that earlier in the evening, when she and the other cheerleaders were eating pizza in Blaine's room, Blaine offered a beer to anyone who wanted one but no one accepted the offer. Another cheerleader testified that she was under the impression that a third cheerleader had asked Blaine earlier in the evening for permission to hold the party and to drink beer, but she later acknowledged that she did not actually hear the other cheerleader make the request. The third cheerleader denied that she asked Blaine for such permission, although she admitted that the party and the beer drinking did take place.

The hearing officer made the following findings of evidentiary fact:

1. The teacher, Patricia Blaine, had no prior knowledge of the party conducted in the student cheerleaders' room on the evening of March 4, 1983, and gave no prior approval to anyone for the conduct of such party, or for beer to be obtained or consumed at such party.

2. Patricia Blaine first learned of the party in the student cheerleaders' room

when she entered the room approximately five minutes subsequent to Betty Campbell going to the room to investigate the noise coming from the room, as testified to by Patricia Blaine and Betty Campbell, whose testimony [is] found to be credible.

3. Patricia Blaine did consume an alcoholic beverage, to wit: beer, while consuming pizza with student cheerleaders in Patricia Blaine's room prior to the party which took place in [the student cheerleaders'] room later on the evening of March 4, 1983, and it is further found that Patricia Blaine did not offer any beer to any of the student cheerleaders while they were in her room consuming pizza, and such student cheerleaders did not, in fact, consume any beer in Patricia Blaine's room at such time.

4. Patricia Blaine attempted to get the student cheerleaders to stop consuming the beer when she discovered it at the aforesaid party by discussing with them the possible discipline which could be imposed both upon the students and upon Patricia Blaine and Betty Campbell.

5. Neither Patricia Blaine [nor] Betty Campbell took any action to attempt to stop the student cheerleaders from continuing with consumption of beer at said party subsequent [to] their discovery that such activity was taking place.

6. Patricia Blaine did consume approximately one-half bottle of beer with said student cheerleaders while participating in a game at their invitation.

7. Patricia Blaine was inexperienced in how to handle the situation which presented itself to her with the student cheerleaders consuming beer at a school activity at which she was a co-sponsor, and, further, that she would in the future take action to stop such activity and report any students participating therein, as testified to by Patricia Blaine, which testimony is found to be credible.

The hearing officer declined to make any ultimate finding on whether Blaine's conduct constituted neglect of duty, deferring instead to the school board on that issue. It was the hearing officer's recommendation that Blaine be retained and that the school board consider imposing upon her the five-day suspension which had been imposed on Campbell for her conduct in the incident.

The school board, on November 10, 1983, adopted a resolution in which it accepted the hearing officer's findings of fact, rejected the recommendation of retention, and entered an order of dismissal. The resolution stated, in pertinent part, as follows:

The Hearing Officer's findings of fact, including but not limited to the following, are appropriate without any indication they are not supported by the record and the Board therefore accepts such findings. Such findings include:

1) Mrs. Blaine knew there was a School District policy against smoking and drinking and knew that teachers had a duty to enforce that policy.

2) Mrs. Blaine did consume alcoholic beverage while in her room with the students present.

3) That Mrs. Blaine took no action to attempt to stop the student cheerleaders from continuing with consumption of beer at the party subsequent to her discovery that such activity was taking place.

4) Mrs. Blaine did consume beer with the student cheerleaders.

\* \* \* \* \* \*

Based on the preceding the Board of Education concludes that Patricia Blaine had a duty to enforce school policy and concludes that Patricia Blaine is guilty of neglect of duty; and the Board of Education further concludes and orders that Patricia Blaine be dismissed.[4]

Blaine appealed from the order of dismissal. The court of appeals construed section

---

4. In its resolution the school board noted that Betty Campbell, the assistant cheerleader spon-

sor, was not a teacher with tenure status and, consequently, the school board "had remedies

22–63–117(10), 9 C.R.S. (1983 Supp.), to require a school board to give its reasons for rejecting the hearing officer's recommendation of retention and for dismissing the teacher only when the record does not support the hearing officer's findings of evidentiary fact and not, as here, when the school board adopts the hearing officer's findings of evidentiary fact. *Blaine*, 709 P.2d at 99. Finding no abuse of discretion on the part of the school board, the court of appeals affirmed the order of dismissal.

We granted Blaine's petition for certiorari to consider two issues: (1) whether the school board violated section 22–63–117(10), 9 C.R.S. (1983 Supp.), when it accepted the hearing officer's findings of evidentiary fact but nonetheless dismissed Blaine over the hearing officer's recommendation of retention; and (2) whether the school board abused its discretion in determining that Blaine was guilty of neglect of duty.

## II.

Since the legal standards for adjudicating charges of teacher misconduct under the Teacher Employment, Dismissal and Tenure Act of 1967 (Teacher Tenure Act), §§ 22–63–101 to –118, 9 C.R.S. (1973 and 1987 Supp.), provide the framework for our analysis of this case, it is helpful to review those standards before addressing Blaine's specific claims.

■■■ The purposes of the Teacher Tenure Act are several. One is to protect the teacher who has acquired tenure from arbitrary action by a school board. *E.g., Ricci v. Davis*, 627 P.2d 1111, 1116 (1981); *Blair*

*v. Lovett*, 196 Colo. 118, 122–23, 582 P.2d 668, 671 (1978). The Teacher Tenure Act accomplishes this purpose by establishing a fair and responsible process for adjudicating charges of teacher misconduct. *Lovett*, 196 Colo. at 122–23, 582 P.2d at 671; *Umberfield v. School Dist. No. 11*, 185 Colo. 165, 171–72, 522 P.2d 730, 733 (1974). Another purpose of the statute is to provide a school board with the necessary means to carry out its constitutional responsibility for the educational program in the public schools of the district. Colo. Const. art. IX, § 15. The Teacher Tenure Act accomplishes this purpose by empowering the board to dismiss a teacher for proven deficiencies in character, ability, or competence. *E.g., Weissman v. Board of Educ.*, 190 Colo. 414, 420–21, 547 P.2d 1267, 1272–73 (1976). The grounds for dismissal of the "tenure teacher," as specified in section 22–63–116, 9 C.R.S. (1973), are: "physical or mental disability, incompetency, neglect of duty, immorality, conviction of a felony, insubordination, or other good and just cause."[5] When charges are filed with a school board against a tenure teacher, the Teacher Tenure Act establishes a two-step process for the administrative adjudication of those charges.

## A.

■■■ The first step in the administrative process is the administrative hearing. The statutory scheme applicable to this case provided for a hearing before a hearing officer selected by the school and the teacher through a "striking" procedure. § 22–63–117(5), 9 C.R.S. (1983 Supp.).[6] The function of the hearing officer is to review

---

available to it to punish her that are not available in proceedings involving tenured teachers."

5. Section 22–63–116, 9 C.R.S. (1973), was amended in 1985 to include as a ground for dismissal "the acceptance of a guilty plea or a plea of nolo contendere to a felony." Ch. 174, sec. 2, § 22–63–116, 1985 Colo.Sess.Laws 745, 746.

6. Section 22–63–117(5), 9 C.R.S. (1983 Supp.), established the following procedure for the selection of a hearing officer:

(5) If a hearing is requested by the teacher, or permitted by the board as provided in subsection (4) of this section, it shall be conducted before a hearing officer selected in the following manner: The board shall, within four days after the receipt of the teacher's request for a hearing, notify the division of hearing officers in the department of administration that a list of three hearing officers is required. Within four days after receipt of said notification from the board, the director of the division of hearing officers shall provide to the board a list of three hearing offi-

the evidence and testimony, to assess the credibility of the witnesses and to weigh conflicting evidence, to draw reasonable inferences from the facts, to make written findings of both evidentiary and ultimate fact, and to make a recommendation that the teacher either be dismissed or retained. § 22–63–117(8), 9 C.R.S. (1983 Supp.); *see deKoevend v. Board of Educ.*, 688 P.2d 219, 225 (Colo.1984). Findings of basic or evidentiary fact involve the raw, historical data underlying the controversy and represent a determination of what the teacher actually did or did not do during the incident in question. *See, e.g., deKoevend*, 688 P.2d at 225; *Lee v. State Bd. of Dental Examiners*, 654 P.2d 839, 844 (Colo.1982); *Ricci*, 627 P.2d at 1118; *Lovett*, 196 Colo. at 124 n. 13, 582 P.2d at 672 n. 13. A finding of ultimate fact, in contrast, involves a conclusion of law or at least a determination of a mixed question of law and fact and settles the rights and liabilities of the parties. *Ricci*, 627 P.2d at 1118. A finding of ultimate fact, for example, would be cast in terms of a conclusion that a teacher's conduct did or did not constitute "neglect of duty" or one of the other statutory grounds for dismissal.

### B.

The second step in the administrative process is the school board's review of the hearing officer's findings and recommendation. As originally enacted in 1967, the Teacher Tenure Act provided for an initial evidentiary hearing before a hearing panel, which was to make written findings of fact and a recommendation of dismissal or retention to the school board, and then described the school board's scope of review as follows:

> The board of education shall review the panel's findings of fact and recommendation and it shall enter its written order within thirty days after the date of the panel's findings and recommendations. The board shall take one of the three following actions: The teacher be dismissed; the teacher be retained; or the teacher be placed on a one-year probation.

§ 123–18–17, 1963 C.R.S. This section was later codified in the 1973 Colorado Revised Statutes as section 22–63–117(10), 9 C.R.S. (1973).

In 1979, section 22–63–117 was amended in several particulars. Ch. 202, sec. 3, §·22–63–117, 1979 Colo.Sess.Laws 800, 801–03. The amendments authorized an initial hearing before a hearing officer, rather than a hearing panel, and added the following italicized language to section 22–63–117(10):

> The board of education shall review the hearing officer's findings of fact and recommendations, and it shall enter its written order within thirty days after the date of the hearing officer's findings and recommendations. The board shall take one of the three following actions: The teacher be dismissed; the teacher be retained; or the teacher be placed on a one-year probation; *but the board shall make a conclusion, giving its reasons therefor, that the hearing officer's findings of fact are not supported by the record made before the hearing officer if it dismisses a teacher over the hearing officer's recommendation of retention. Any such finding shall be included in its written order.*

Ch. 202, sec. 3, § 22–63–117(10), 1979 Colo. Sess.Laws 801, 803 (emphasis added).

### C.

We addressed the interrelationship of the two-step process for administrative adjudication of misconduct charges under the Teacher Tenure Act in *Lovett*, 196 Colo. 118, 582 P.2d 668, decided in 1978, again in

---

cers and shall certify that each of the hearing officers on the list is available to commence the hearing and render a decision within the time limits prescribed in this section. Within seven days after receipt of the list, the board shall strike one name from the list and forward the list to the teacher who shall, within seven days after receipt of the list, strike one name from the list, and the remaining person shall be the hearing officer.

Ricci, 627 P.2d 1111, decided in 1981, and more recently in deKoevend, 688 P.2d 219, decided in 1984. Although the statutory scheme in Lovett and Ricci provided for an initial evidentiary hearing by a hearing panel, we noted in deKoevend that the adjudicatory functions of the hearing panel were no different from those of the hearing officer under the 1979 amendment, which is applicable to this case. deKoevend, 688 P.2d at 225. Our prior decisions make clear that the evidentiary findings of the hearing officer, if adequately supported by the record, are binding on the school board in its review function. deKoevend, 688 P.2d at 225–26; Ricci, 627 P.2d at 1117; Lovett, 196 Colo. at 123, 582 P.2d at 671–72.

■ Since the Teacher Tenure Act is designed to provide teachers with a fair and responsible process of administrative adjudication, the school board, in exercising its review function, may appropriately review the evidentiary record in order to assure itself that the hearing officer's findings of evidentiary fact are supported by substantial evidence. deKoevend, 688 P.2d at 225–26; Ricci, 627 P.2d at 1116–17; Lovett, 196 Colo. at 123, 582 P.2d at 671–72. Our prior decisions, however, consistently hold that the school board may not look outside the four corners of the hearing officer's findings of evidentiary fact for the purpose of discovering some new evidentiary basis for the board's ultimate determination. Id. If, for example, the hearing officer's findings of evidentiary fact are not sufficiently specific or detailed to allow the school board to make an ultimate finding, the proper course is for the school board to remand the case to the hearing officer for additional findings. Lovett, 196 Colo. at 123, 582 P.2d at 671–72. To permit the board to make new findings of evidentiary fact would contravene the underlying statutory scheme by transferring the hearing officer's responsibility for making factual determinations, which determinations are necessarily based on an evaluation of the credibility of witnesses and often require a weighing of conflicting evidence, to an administrative board which has neither seen nor heard the testimony of the witnesses. Ricci, 627 P.2d at 1119; Lovett, 196 Colo. at 123, 582 P.2d at 671.

■ Since the school board is given " 'considerable discretion' to fix the precise substantive content" of the general statutory bases for dismissal in exercising its ultimate factfinding function, Ricci, 627 P.2d at 1118, and since the school board, not the hearing officer, is vested with the ultimate authority to dismiss or retain the tenure teacher, the school board is not bound by the hearing officer's findings of ultimate fact or recommendation of dismissal or retention. As this court observed in Lovett:

> [W]e must also take care not to unduly restrict the board's ultimate authority, for there is no indication of a legislative intent to delegate that authority to the hearing panel [or hearing officer].
>
> * * * * * *
>
> If we were to hold that the panel's [or hearing officer's] findings of ultimate fact were binding on the board, we would essentially transfer that discretion to a temporary, non-elected body. We cannot believe that the legislature intended substantially to dilute the powers of the state's elected boards of education, since they have the responsibility of implementing and carrying out the educational programs of their respective communities and must have authority adequately to ensure them to discharge that responsibility.

Lovett, 196 Colo. at 124, 582 P.2d at 672–73 (emphasis in original) (citation omitted). While the board in making findings of ultimate fact is vested with considerable discretion in fixing the precise substantive content of the statutory grounds for dismissal, the statutory scheme contemplates that such ultimate findings must be fully warranted by the hearing officer's findings of evidentiary fact. deKoevend, 688 P.2d at 226; Ricci, 627 P.2d at 1119; Lovett, 196 Colo. at 124–25, 582 P.2d at 672–73.

It is in light of these standards that we turn to the questions which this case poses for resolution.

### III.

We first consider whether the school board violated section 22–63–117(10), 9 C.R. S. (1983 Supp.), when it accepted the hearing officer's findings of evidentiary fact but nonetheless ordered Blaine's dismissal contrary to the hearing officer's recommendation of retention. Resolution of this issue centers on the 1979 amendment to section 22–63–117(10), which requires the school board, when it dismisses a teacher over the hearing officer's recommendation of retention, to "make a conclusion, giving its reasons therefor, that the hearing officer's findings of fact are not supported by the record." Blaine argues that the 1979 amendment permits a school board to dismiss a tenure teacher contrary to the hearing officer's recommendation of retention only if the school board first determines that the hearing officer's findings of fact are not supported by the record. Blaine's argument proceeds from the assumption that the reference in the 1979 amendment to "the hearing officer's findings of fact" refers to findings of both evidentiary and ultimate fact, rather than to findings of ultimate fact only. We reject such a construction as contrary to one of the basic purposes of the Teacher Tenure Act.

### A.

■ "Because legislative intent is the polestar of statutory construction, a statute should be given that construction which will permit, if at all feasible, the accomplishment of the statutory objective." *People v. District Court*, 711 P.2d 666, 670 (Colo.1985). One of the primary purposes of the Teacher Tenure Act is to protect the teacher against arbitrary action by a school board by requiring that charges of misconduct be heard by an impartial hearing officer whose function is to assess the credibility of witnesses and weigh the evidence, to draw reasonable inferences from conflict-

ing evidence, to make findings of both evidentiary and ultimate fact, and to recommend that the teacher either be retained or dismissed. *deKoevend*, 688 P.2d at 225; *Ricci*, 627 P.2d at 1118; *Lovett*, 196 Colo. at 122–23, 582 P.2d at 671. Blaine's proposed construction of the 1979 amendment, in our view, flies in the face of this statutory objective.

■ If Blaine's proposed construction of the 1979 amendment is sound, it would inevitably follow that the school board could reject the hearing officer's findings of evidentiary fact, and then could enter an order of dismissal over the hearing officer's recommendation of retention, so long as the school board was of the opinion that the hearing officer's findings of evidentiary fact were unsupported by the record and so stated in its order of dismissal. Delegating such authority to the school board, however, would substantially undermine one of the basic purposes of the Teacher Tenure Act, which is to protect the teacher against arbitrary action by the school board. *E.g., Ricci*, 627 P.2d at 1116; *Lovett*, 196 Colo. at 122–23, 582 P.2d at 671. Such delegated authority would permit the school board to reject the hearing officer's findings of evidentiary fact as unsupported by the evidence and then, notwithstanding the absence of any additional or new findings of evidentiary fact by the hearing officer, to enter an order of dismissal. The court of appeals seems to have adopted such an interpretation of the 1979 amendment when it stated in its opinion that the amendment applies "only to the situation in which the board, in rejecting the hearing officer's recommendation of retention, does so on the basis that the record does not support his findings of evidentiary fact," but that the 1979 amendment "is inapplicable where, as here, the board adopts the hearing officer's findings of evidentiary fact." *Blaine*, 709 P.2d at 99. Our prior decisions, however, make clear that the Teacher Tenure Act was not intended to vest the school board with the authority to make ultimate findings in the absence of a clear warrant for

such ultimate findings in the hearing officer's findings of evidentiary fact. *deKoevend*, 688 P.2d at 225–26; *Ricci*, 627 P.2d at 1119; *Lovett*, 196 Colo. at 122–23, 582 P.2d at 671–72. As we observed in *Ricci*, 627 P.2d at 1119, the statutory goal of providing the teacher with a fair and responsible process of administrative adjudication "would be frustrated if a board's ultimate findings were to be retrospectively justified by 'raw' evidence ... never adopted as a finding of fact by the hearing panel [or hearing officer]." To permit the school board to make new ultimate findings solely because it concludes that the hearing officer's evidentiary findings are unsupported by the evidence would result in the very type of arbitrary administrative action that the Teacher Tenure Act was designed to prevent.

 Recognizing that the 1979 amendment can hardly be characterized as a model of clarity, we believe the most plausible construction, consistent with the overriding statutory scheme, is that it vests the school board with authority to reject a hearing officer's findings of *ultimate fact* and *recommendation of retention*, and to substitute in their place new ultimate findings and an order of dismissal, as long as the new ultimate findings are fully warranted by the evidentiary findings of the hearing officer and the school board states the reasons for its new findings of ultimate fact. Such construction accords with the rule, fully articulated in our 1978 decision in *Lovett*, 196 Colo. 118, 582 P.2d 668, and subsequently reaffirmed in *Ricci*, 627 P.2d 1111, and *deKoevend*, 688 P.2d 219, that findings of evidentiary fact are binding on the school board if adequately supported by the record, but that the school board may reject a finding of ultimate fact because it is the school board, not the hearing officer, that "has the power to determine what facts constitute the statutory grounds for dismissal." *Lovett*, 196 Colo. at 125, 582 P.2d at 673. If the school board finds as an ultimate fact that the teacher is guilty of one of the statutory grounds for

dismissal as charged, and such finding of ultimate fact is supported by the hearing officer's findings of evidentiary fact, then the statutory sanction to be imposed on the teacher—that is dismissal, retention, or one year probation, § 22–63–117(10), 9 C.R.S. (1983 Supp.)—is for the school board, not the hearing officer, to decide.

The legislative history available to us, while somewhat sparse, shows that the legislature was aware of the respective roles of the hearing officer and the school board, as described in this court's 1978 decision in *Lovett*, 198 Colo. at 123, 582 P.2d at 671–72, and did not view the 1979 amendment as changing those roles. *See* Tape recording of Testimony before House Committee on Education on House Bill 1234, March 14, 1979, 52d General Assembly; Tape recording of Testimony before Senate Committee on Education on House Bill 1234, April 20, 1979, 52d General Assembly. Senator Fred Anderson, one of the sponsors of the 1979 amendment, stated during floor debate that the amendment simply placed on the school board the burden of justifying on appeal the board's ultimate decision. Tape recording of Senate Floor Debate on House Bill 1234, April 30, 1979, 52d General Assembly. This view of the 1979 amendment is consistent with the rule announced in *Lovett* that the school board's findings of ultimate fact must be clearly warranted by the hearing officer's findings of evidentiary fact. *Lovett*, 196 Colo. at 123, 582 P.2d at 671–72. We thus see no reason to construe the statute contrary to that basic rule, at least in the absence of a clear expression of legislative intent to override our prior decisional law in this area.

The construction we herein adopt—that the 1979 amendment vests the school board with authority to reject a hearing officer's findings of ultimate fact and recommendation of retention, and to substitute in their place new ultimate findings and an order of dismissal, as long as the new ultimate findings and sanction are fully warranted by the evidentiary findings of the hearing officer and the school board states the reasons

for its new findings of ultimate fact—fosters the basic goals of the Teacher Tenure Act in several ways. First, it protects the teacher against arbitrary action by the school board by prohibiting the board from dismissing a teacher merely because the board determines that the hearing officer's findings of evidentiary fact underlying a recommendation of retention are not supported by the record. Such a determination by the school board really means that the school board is not in a position to make any findings of ultimate fact, or to impose any sanction, since there are no proven evidentiary facts on which to predicate an ultimate finding or sanction. Under these circumstances, the appropriate course of action is for the school board to remand the case for new or additional evidentiary findings by the hearing officer. *See Lovett,* 196 Colo. at 123, 582 P.2d at 671–72.[7] Second, our construction preserves the authority of the school board, in exercising its ultimate factfinding function, to fix the precise substantive content of the statutory grounds for dismissal, *Ricci,* 627 P.2d at 1118, subject to the reasonable condition that the board's ultimate findings be warranted by the evidentiary findings of the hearing officer, and also preserves the board's ultimate authority over the appropriate sanction to be imposed whenever any of the statutory grounds for dismissal has been established. Last, our construction fosters meaningful judicial review of the school board's decision by requiring that the grounds for any finding of ultimate fact by the board be clearly disclosed and adequately supported by the record. By limiting the school board's authority to make new findings only to the category of ultimate fact, and only when the new ultimate facts are warranted by the hearing officer's findings of evidentiary fact and the school board states the reasons for its ultimate findings, the 1979 amendment provides a reviewing court with a record that will permit the court to determine whether the school board's new findings of ultimate fact are indeed fully warranted by the findings of evidentiary fact made by the hearing officer.

### B.

■ In this case the hearing officer incorrectly declined to make any findings of ultimate fact. We point out here that the statutory scheme and our prior decisions contemplate that the hearing officer make findings of both evidentiary fact and ultimate fact as well as a recommendation of dismissal or retention. *See* § 22–63–117(8), 9 C.R.S. (1983 Supp.); *deKoevend,* 688 P.2d 219; *Ricci,* 627 P.2d 1111; *Lovett,* 196 Colo. 118, 582 P.2d 668. Findings of ultimate fact by the hearing officer inform the school board of the hearing officer's final resolution of the charge and assures the school board that the hearing officer's recommendation of dismissal or retention was made on the basis of that final resolution. Without such ultimate findings, the school board must resort to inference drawing on that issue. While in some cases the hearing officer's evidentiary findings may be very specific and leave no doubt that the hearing officer was satisfied that the charges against the teacher were proven, such may not always be the case. Therefore, the hearing officer (or administrative law judge under the 1987 version of section 22–63–117, *see supra* n. 1) should make findings of both evidentiary and ultimate fact, along with a recommendation of dismissal or retention.

■ Although the hearing officer in this case did not make findings of ultimate fact, he did make extensive findings of evidentiary fact. These findings of evidentiary fact, which were adopted by the

---

7. In those cases where the hearing officer makes adequate findings of evidentiary fact which are fully supportive of the hearing officer's finding of ultimate fact that the teacher is not guilty of the statutory ground for dismissal charged against the teacher, and the hearing officer accordingly recommends that the teacher be retained, the school board must order the teacher's retention, since there is no other basis in the hearing officer's evidentiary findings to support any other determination.

school board in its resolution, leave no doubt that the hearing officer was satisfied that the charge of neglect of duty was proven. Our review of the record satisfies us that the hearing officer's findings of evidentiary fact are supported by substantial evidence in the record. In addition to adopting the hearing officer's findings of evidentiary fact, the school board in its resolution also gave its reasons for concluding that these evidentiary findings warranted an ultimate finding that Blaine's conduct constituted "neglect of duty" and thus justified an order of dismissal. The school board's ultimate finding of neglect of duty finds support in both the findings of evidentiary fact made by the hearing officer and in the evidence submitted at the administrative hearing conducted by the hearing officer.

Given this state of the record, we conclude that, consistent with our construction of the 1979 amendment to section 22–63–117(10), the board in the instant case properly exercised its statutory prerogative when, after adopting the hearing officer's findings of evidentiary fact and determining that those findings were supported by the record, it nonetheless made a finding of ultimate fact that Blaine was guilty of neglect of duty and ordered her dismissal over the hearing officer's recommendation of retention.

## IV.

We turn then to Blaine's claim that the school board abused its discretion when it determined that Blaine's conduct constituted neglect of duty under the Teacher Tenure Act. Blaine raises three arguments in support of her claim, all of which we find to be without merit.

### A.

■ Relying on our decision in *Weissman v. Board of Educ.*, 190 Colo. 414, 547 P.2d 1267 (1976), Blaine initially argues that her conduct in drinking beer with the cheerleaders could not constitute neglect of duty because it was not demonstrated that her conduct adversely affected her fitness to teach. Contrary to Blaine's argument, *Weissman* has no applicability here.

■ In *Weissman*, a tenure teacher was dismissed for several reasons, including immorality, as the result of his repeated touchings of female high school students during a field trip. Weissman appealed the order of dismissal and argued that the statutory ground of "immorality" in section 22–63–116, 9 C.R.S. (1973), was unconstitutionally vague. In rejecting Weissman's constitutional challenge, we noted that although the statutory text did not explicitly require that the "immorality" arise out of or adversely affect the teacher's fitness to teach, such requirement could be readily implied from the fact that "immorality" was included with other grounds for dismissal that were directly related to the teacher's fitness to teach—such as, for example, physical and mental disability, incompetency, neglect of duty, conviction of a felony, and insubordination. Because "immorality" can take many forms including private peccadillos or personal shortcomings, and because some forms of "immorality" may have little or no bearing on the teacher's relationship to students, fellow teachers, or the school community, we held that Weissman's actions could not constitute immorality within the meaning of the statute unless those actions also indicated an unfitness to teach. *Weissman*, 190 Colo. at 420, 547 P.2d at 1272.[8]

In contrast to "immorality," "neglect of duty" is directly related to the teacher's fitness to teach. "Neglect of duty" occurs

**8.** We stated in *Weissman*, 190 Colo. 414, 420–21, 547 P.2d 1267, 1273–74 (1976):

As the California Supreme Court said in *Morrison v. State Board of Education*, 1 Cal.3d 214, 461 P.2d 375, 82 Cal.Rptr. 175:

" * * * Without such a reasonable interpretation the [statutory reference to immoral conduct] would be susceptible to so broad an application as possibly to subject to discipline virtually every teacher in the state. In the opinion of many people laziness, gluttony, vanity, selfishness, avarice, and cowardice constitute immoral conduct. * * * "

We do not believe that the legislature intended to potentially subject every teacher to discipline, even dismissal, for private peccadillos

when a teacher fails to carry out his or her obligations and responsibilities in connection with classroom and other school sponsored activities. In this case, Blaine's position as a tenure teacher and head supervisor of the cheerleading program required her to abide by all the school district's policies and regulations concerning the consumption of alcohol by students on school sponsored activities. The record leaves no doubt that Blaine consumed beer with student cheerleaders, that she knew such conduct could result in the imposition of disciplinary action, that she failed to take effective measures to stop the cheerleaders from engaging in the prohibited activity, and that her conduct had a direct bearing on her relationship to students and the school community. Under these circumstances, there is simply no basis to conclude that the school board abused its discretion in making its ultimate finding that Blaine was guilty of neglect of duty.

### B.

■■■ Blaine also argues that the school board abused its discretion when it found her guilty of neglect of duty because, according to Blaine, the hearing officer's findings of evidentiary fact, when considered in proper context, minimize Blaine's culpability and do not support the school board's ultimate finding. We again find this argument devoid of merit.

Although the school board did not specifically incorporate in its resolution all the findings of evidentiary fact made by the hearing officer, the board did state in its resolution that it was accepting all of those findings in reaching its ultimate decision that Blaine should be dismissed. To be sure, some of the hearing officer's evidentiary findings tended to minimize Blaine's culpability, but it by no means follows that the school board abused its discretion in determining that, based on the total findings of evidentiary fact by the hearing officer, Blaine was guilty of neglect of duty. The school board's ultimate finding of neglect of duty is clearly warranted by the hearing officer's findings of evidentiary fact.

### C.

■■■ Blaine finally claims that the school board abused its discretion by stating in its resolution that she knew of the district policy prohibiting the drinking of alcoholic beverages by students during a school sponsored activity and knew also that teachers had a duty to enforce that policy, when in fact the hearing officer made no specific findings on these matters. Blaine accordingly requests that the case be remanded to the hearing officer for a resolution of this factual issue. We are unpersuaded by Blaine's argument.

We acknowledge that a remand is appropriate in those situations in which the hearing officer's findings of evidentiary fact are not sufficiently specific to enable the board to make an ultimate finding of fact. *Lovett,* 196 Colo. at 125, 582 P.2d at 673. In the instant case, however, the hearing officer's findings of evidentiary fact were sufficiently specific to allow the board to perform its ultimate fact finding responsibility. While it is true that the hearing officer did not make a specific finding that Blaine had knowledge of the school district's policy regarding alcohol consumption by students during school sponsored activities, it nonetheless cannot be disputed that Blaine as head cheerleader sponsor was

or personal shortcomings that might come to the attention of the board of education, but yet have little or no relation to the teacher's relationship with his students, his fellow teachers, or with the school community. This view is in accord with the vast weight of contemporary judicial decisions. *Erb v. Iowa State Board of Public Instruction,* 216 N.W.2d 339 (Iowa 1974); *Wright v. Superintending Sch. Com., City of Portland,* 331 A.2d 640 (Me.1975); *In Re Grossman,* 127 N.J.Super. 13, 316 A.2d 39; *Jerry v. Board of Ed. of City Sch. Dist. of Syracuse,* 35 N.Y.2d 534, 324 N.E.2d 106, 364 N.Y.S.2d 440; *Jarvella v. Willoughby–Eastlake City Sch. Dist.,* 12 Ohio Misc. 288, 41 Ohio Op.2d 423, 233 N.E.2d 143; *cf. Mindel v. United States Civil Service Commission,* 312 F.Supp. 485 (N.D.Cal.1970); *Stevens v. Hocker,* 91 Nev. 392, 536 P.2d 88.

presumed to know the district policy in that respect. Moreover, the hearing officer's finding that Blaine was aware of and told the student cheerleaders that she could be disciplined as a result of the students' conduct is, in our view, tantamount to a finding that Blaine knew of the policy and her responsibility for its enforcement. Finally, Blaine admitted in her testimony that she knew of these matters when she came upon the cheerleaders drinking beer in their motel room.

 In summary, there is simply no basis to conclude that the board abused its discretion in determining that Blaine's conduct constituted neglect of duty. Nor can we say that dismissal, a sanction expressly authorized by section 22–63–117(10), 9 C.R.S. (1983 Supp.), was such an unwarranted form of discipline as to constitute an abuse of school board discretion.

The judgment of the court of appeals is affirmed.

LOHR, J., concurs in part and dissents in part.

KIRSHBAUM and MULLARKEY, JJ., join in the concurrence and dissent.

LOHR, Justice, concurring in part and dissenting in part:

I agree with the majority's explication of the relative duties and powers of the hearing officer and the school board and with its construction of the 1979 amendment to section 22–63–117(10), 9 C.R.S. (1983 Supp.). I also agree that the school board acted within the bounds of its authority in finding as an ultimate fact that Patricia Blaine's conduct in this case amounted to neglect of duty under section 22–63–116, 9 C.R.S. (1987 Supp.). However, in my opinion the school board abused its discretion by dismissing Blaine instead of imposing one of the other available options of retention or probation. I therefore respectfully dissent.

A school board's function in reviewing a hearing officer's findings of fact and rec-

ommendations is not at an end when it concludes that the evidentiary facts found by the hearing officer justify a finding of ultimate fact by the school board that one of the grounds for dismissal specified in section 22–63–116 has been established. The board then must "take one of the three following actions: The teacher be dismissed; the teacher be retained; or the teacher be placed on a one-year probation; ..." § 22–63–117(10), 9 C.R.S. (1983 Supp.). In selecting the appropriate action, the school board exercises a discretionary function. Consistent with the board's responsibility for administration of the school, it is appropriate that such discretion be broad.

This is not to say, however, that the board's authority to select the appropriate action following a finding of grounds for dismissal is absolute and unreviewable. Rather, as the majority recognizes, both the ultimate fact found and the sanction selected must be warranted by the evidentiary findings of the hearing officer. Majority op. at 1290–91. Moreover, the legislature has provided for broad judicial review of any order of the board under the Teacher Tenure Act. *See Umberfield v. School Dist. No. 11*, 185 Colo. 165, 171–72, 522 P.2d 730, 733 (1974). Section 22–63–117(11), 9 C.R.S. (1983 Supp.), provides that judicial review is governed by section 24–4–106(11), 10 C.R.S. (1982). Section 24–4–106(11)(e) provides that the standard of review as set forth in section 24–4–106(7) applies to appeals brought under subsection (11). Section 24–4–106(7) authorizes a reviewing court to set aside a school board's order if it constitutes "an abuse or clearly unwarranted exercise of discretion." In the present case, I believe that the severe sanction of dismissal is not warranted by the evidentiary findings and that the school board exceeded the limits of its admittedly broad discretion in discharging Patricia Blaine from her employment as a tenure teacher.

The school board accepted all of the hearing officer's findings of evidentiary fact. Blaine was head cheerleader sponsor for

student cheerleaders in the Moffat County School District. She accompanied eight female student cheerleaders to a district basketball tournament in Grand Junction. There, while eating pizza with the student cheerleaders in Blaine's motel room, Blaine consumed a beer but did not offer beer to any of the students. Later in the evening, Blaine and her assistant discovered a party in progress in one of the two rooms in which the cheerleaders were staying. Some of the cheerleaders were drinking beer. Blaine had no prior knowledge of the party and had given no prior approval to anyone for the conduct of the party or for beer to be obtained or consumed at the party. Blaine was inexperienced in how to handle the situation with which she was confronted. She first attempted to get the cheerleaders to stop consuming beer by discussing with them the possible discipline which could be imposed upon the students, Blaine and her assistant. When this proved unsuccessful, Blaine elected to stay with the students and take no further action to attempt to stop the beer drinking. She participated in a game at the cheerleaders' invitation and consumed one-half bottle of beer in the course of that activity. The hearing officer found that Blaine would in the future take action to stop such activity and report any students participating therein.

The picture presented by the hearing officer's findings and the evidence upon which they were based was that of an inexperienced chaperone confronted with a volatile situation involving students away from home and consuming alcohol in their motel room. The evidence reflects without contradiction that the motel was occupied by basketball teams and cheerleading squads from various schools in attendance at the district basketball tournament. On the night of the party, students were roaming the hallways, moving from room to room and jumping off the second floor balconies. Blaine's assistant described the scene in the motel as "total chaos." Blaine elected a non-confrontive approach that resulted in the persons under her supervision remaining safe in their room. Admittedly, she erred in judgment in joining the cheerleaders in drinking and in not taking more aggressive action to terminate the consumption of alcohol. Blaine's actions, however, were the actions of a concerned and well intentioned but inexperienced chaperone. She was described by the superintendent of schools as a good teacher. Whatever mistakes she made were the product of her attempt to control the cheerleaders during a potentially dangerous night of high school partying.

Blaine's conduct simply did not warrant the devastating sanction of dismissal of a tenure teacher. While the board could properly conclude that Blaine was guilty of neglect of duty, it was not required to dismiss her. The board had the option to retain Blaine or place her on probation. In my opinion, the board abused its broad discretion by dismissing Blaine when a different course of action was both available and amply justified. Therefore, even though I agree with the majority's explanation of the law, I dissent from its affirmance of the teacher's dismissal and would reverse the judgment of the court of appeals.

I am authorized to say that Justice KIRSHBAUM and Justice MULLARKEY join in this concurrence and dissent.