**Alex WOODS, Jr., Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF DENVER, a municipal corporation; and Civil Service Commission of the City and County of Denver, Defendants–Appellees.**

No. 03CA1848.

Colorado Court of Appeals,
Div. I.

June 30, 2005.

Certiorari Denied Nov. 21, 2005.

Bruno, Bruno & Colin, P.C., Marc F. Colin, Michael T. Lowe, Denver, Colorado, for Plaintiff–Appellant.

Cole Finegan, City Attorney, Linda M. Davison, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

CARPARELLI, J.

In this action for mandamus and judicial review pursuant to C.R.C.P. 106(a)(2) and (4), plaintiff, Alex Woods, Jr., a former police officer with the Denver Police Department, appeals from the trial court order affirming the determination of the City and County of Denver (Denver) and the Civil Service Commission of Denver (Commission) that he is disqualified from serving as a police officer because the federal Gun Control Act of 1968(GCA), 18 U.S.C. § 921, et seq., as amended, prohibits him from possessing a firearm. We affirm.

The Lautenberg Amendment (Amendment) to the GCA, 18 U.S.C. § 922(g)(9), makes it unlawful for persons convicted of "misdemeanor crimes of domestic violence" to possess or receive firearms. It includes those who have been convicted of a violent misdemeanor when the perpetrator and the victim are similarly situated to spouses, parent and child, or guardian and protected person.

Plaintiff was convicted by a jury of third degree assault, a misdemeanor under Colorado law. It was undisputed that although plaintiff and the victim lived together for about a year, they were no longer living together at the time of the assault.

In response to an inquiry from the Denver Police Department, the Bureau of Alcohol, Tobacco, and Firearms (BATF) advised that plaintiff's conviction was for a misdemeanor crime of domestic violence as defined in the Amendment. In particular, the BATF expressed the opinion that plaintiff and the victim had been similarly situated to spouses prior to the assault.

As a result, Denver disqualified plaintiff from further employment as a police officer.

Plaintiff appealed his termination, and the hearing officer concluded that because plaintiff was not living with the victim at the time of the assault, the Amendment did not prohibit him from possessing a firearm. The hearing officer ordered plaintiff reinstated with back pay and benefits.

Denver appealed to the Commission. The Commission concluded that BATF's advisory interpretation of the Amendment should be given deference and that the Commission's hearing officer generally should not consider "any question concerning the accuracy of BATF's interpretation of the [f]ederal statute, or its opinion concerning the statute's applicability to [plaintiff's] circumstance." The Commission further concluded that Denver "established by preponderance of the evidence that the dismissal was justified," and, as a result, it reversed the hearing officer's decision.

Plaintiff then filed an action pursuant to C.R.C.P. 106(a)(2) and (4). The trial court affirmed the Commission's decision.

I. Commission's Jurisdiction

Plaintiff contends that the Commission did not have jurisdiction to review the hearing officer's interpretation of the Lautenberg Amendment because it did not involve policy considerations. We disagree.

Pursuant to Denver's Charter, the Commission may only review a hearing officer's decision when (a) new and material evidence is available that was not available when the appeal was heard by the hearing officer, (b) the decision of the hearing officer involves an erroneous interpretation of departmental or civil service rules, (c) the decision of the hearing officer involves policy considerations that may have effect beyond the case at hand, or (d) the discipline affirmed or imposed by the hearing officer is inconsistent with discipline received by other members of the department under similar circumstances. Denver Charter § 9.4.15(F); *Vukovich v. Civil Serv. Comm'n*, 832 P.2d 1126 (Colo. App.1992).

Here, the hearing officer's decision presented policy considerations regarding whether to adopt a federal agency advisory interpretation of the federal statute it administers, whether to disqualify police officers when BATF has conducted an investigation and provided an advisory opinion that is specific to those police officers, whether Denver

should apply a consistent interpretation of the Amendment in all cases, and what interpretation Denver believes is correct and should be applied in other cases.

We therefore conclude that the hearing officer's decision implicated policy considerations having effect beyond the case at hand and that, as a result, the Commission did not exceed its jurisdiction when it reviewed that decision.

## II. "Similarly Situated to Spouses"

■ Plaintiff contends that the Commission erroneously concluded that he and the victim were similarly situated to spouses. He argues that the Commission was bound by the hearing officer's finding to the contrary and that it abused its discretion when it required that the hearing officer defer to BATF's advisory interpretation of the Amendment. We conclude that the Commission applied the Amendment correctly.

### A. Standard of Review

■ In a C.R.C.P. 106(a)(4) proceeding, the trial court's review is limited to determining whether the Commission exceeded its jurisdiction or abused its discretion. *See City of Colorado Springs v. Givan*, 897 P.2d 753 (Colo.1995). When an action under C.R.C.P. 106(a)(4) is appealed, we review the decision of the administrative body itself, not that of the trial court. *See City of Colorado Springs v. Securcare Self Storage, Inc.*, 10 P.3d 1244 (Colo.2000).

■ We undertake the same review as the trial court; we must determine whether the Commission applied the correct legal standard and whether there is competent evidence to support the Commission's exercise of discretion. *McCann v. Lettig*, 928 P.2d 816 (Colo.App.1996). We review the Commission's interpretations of law de novo. *United Airlines, Inc. v. Indus. Claim Appeals Office*, 993 P.2d 1152 (Colo.2000). We uphold the Commission's exercise of discretion unless it is "so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Carney v. Civil Serv. Comm'n*, 30 P.3d 861, 863 (Colo.App.2001)(quoting *Bd. of County Comm'rs v. O'Dell*, 920 P.2d 48, 50 (Colo.1996)).

### B. Findings of Fact or Conclusions of Law

The Commission is bound by the hearing officer's findings of evidentiary fact. Commission Rule XII, § 5.E.6; *Blaine v. Moffat County Sch. Dist. re No. 1*, 748 P.2d 1280 (Colo.1988).

Evidentiary facts are the raw historical data underlying a controversy, whereas ultimate conclusions of fact are conclusions of law or mixed questions of law and fact that determine the rights and liabilities of the parties based on findings of fact. The distinction between an evidentiary fact and an ultimate conclusion of fact is not always clear, but an ultimate conclusion of fact is, as a general rule, phrased in the language of the controlling statute or legal standard. *Federico v. Brannan Sand & Gravel Co.*, 788 P.2d 1268 (Colo.1990).

■ Here, the determination that plaintiff was "similarly situated to a spouse" within the meaning of the Amendment determines plaintiff's rights and liabilities and thus is an ultimate conclusion of fact.

As to this question, the Commission deferred to BATF's advisory interpretation of the phrase "similarly situated to a spouse," deferred to BATF's opinion about whether plaintiff and the victim were similarly situated to spouses, deferred to BATF's opinion concerning plaintiff's eligibility to possess a firearm, and concluded that Denver proved that plaintiff's disqualification was justified. Each of these rulings constituted a legal conclusion, not a finding of fact. Therefore, the Commission was not bound by the hearing officer's determination of whether plaintiff and the victim were similarly situated to spouses.

Thus, the essential question is whether the Commission's decision regarding plaintiff's disqualification is based on proper application of the correct legal standard. As discussed below, we conclude that it is.

### C. Lautenberg Amendment

As we consider the legal standard established by the Lautenberg Amendment, we are guided by well-established principles of statutory construction. We must interpret the Amendment in a manner that gives effect

to congressional intent. To do this, we begin with the language of the statute, giving words their plain and ordinary meaning. *Carlson v. Ferris,* 85 P.3d 504 (Colo.2003). We construe the statute as a whole to give consistent, harmonious, and sensible effect to all its parts. *Charnes v. Boom,* 766 P.2d 665 (Colo.1988).

### 1. Domestic Relationships

Under 18 U.S.C.A. § 922(g)(9), it is illegal for any person who has been convicted of "a misdemeanor crime of domestic violence" to "possess in or affecting commerce, any firearm or ammunition."

The phrase "misdemeanor crime of domestic violence" is defined in 18 U.S.C. § 921(a)(33) as a misdemeanor under federal or state law that has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon,

> committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, *or by a person similarly situated to a spouse,* parent, or guardian of the victim.

(Emphasis added.)

Thus, the definition of "misdemeanor crime of domestic violence" has three components: (1) it must be a misdemeanor crime; (2) it must involve violence by way of the use or attempted use of physical force or the threatened use of a deadly weapon; and (3) it must occur between parties to a domestic relationship.

Under the statute, domestic relationships include: spouses, parents and children, guardians and protected persons, (collectively, the specifically identified legal relationships), parents of the same child, persons who cohabit as having the specifically identified legal relationships, and persons who are similarly situated to those who have the specifically identified legal relationships (similar relationship or similarly situated persons). And this definition of "domestic" is essential to the meaning of "misdemeanor crimes of domestic violence."

With regard to persons who share the specifically identified legal relationships and those who cohabit as if they shared them, the statute clearly provides that, once such a relationship exists, a violent crime between them constitutes "domestic violence," irrespective of whether the relationship existed at the time of the crime or was terminated before the crime occurred. However, it is not clear whether the definition includes, as relevant here, violence that occurs between persons who previously terminated their similar relationship.

### 2. Timing of Relationship

Plaintiff contends that because he and the victim ended their intimate cohabitation before the assault, he is not similarly situated to a spouse and the crime does not constitute domestic violence for purposes of the statute. Denver and the Commission argue otherwise. We conclude that plaintiff's interpretation does not give consistent, harmonious, and sensible effect to all parts of the definition.

Statutory interpretations that produce absurd results are disfavored. *People v. Luther,* 58 P.3d 1013 (Colo.2002).

Under plaintiff's interpretation of the definition, a person who commits a misdemeanor crime of violence *after terminating* a marriage or *after ceasing* to cohabit as a spouse would be prohibited from possessing a firearm, but one who commits such a crime *after declaring an end* to a similar relationship would not. In addition, under plaintiff's interpretation, a person who commits such a crime the day *before* declaring an end to a similar relationship would be prevented from possessing a firearm while one who commits the same crime the day *after* such a declaration would be permitted to possess a firearm. We conclude that plaintiff's interpretation would produce an absurd result, and therefore we reject it.

### 3. Legislative Intent

Statutory provisions that appear to be clear when read in isolation can be ambiguous when read in the context of the statute as a whole. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986)(admiralty provision evaluated in light of the language of the statute as

a whole, the legislative history, the underlying purposes, and importance of uniformity); *Chem. Mfrs. Ass'n v. Natural Res. Def. Council, Inc.*, 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985)(literal interpretation rejected because it made "little sense" in the context of the statute as a whole and would contradict explicit requirements in another provision).

Here, we conclude that the phrase "or by a person similarly situated to a spouse" is ambiguous when read in the context of the definition as a whole.

■■■ When a statutory provision is unclear or ambiguous, we look to sources of legislative intent, including the object the legislature sought to obtain by the enactment, the circumstances under which it was adopted, and the consequences of a particular construction. *CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.*, 105 P.3d 658 (Colo.2005); *People v. Luther, supra.*

The purpose of the Amendment is to protect victims of domestic violence. *See* 142 Cong. Rec. S11227 (1996)(statement of Sen. Lautenberg). And Congress intended the statute to have broad application and enforcement. *See United States v. Smith*, 964 F.Supp. 286 (N.D.Iowa 1997), *aff'd*, 171 F.3d 617 (8th Cir.1999).

In supplementary information related to the regulations that implement the Amendment, BATF interpreted the phrase "similarly situated to a spouse" as "persons who share the same domicile in an intimate relationship." It defines domicile as "one's fixed place of dwelling, where one intends to reside more or less permanently." 63 Fed.Reg. 35520–01.

We conclude that, viewed in the light of the Amendment's purpose of protecting victims of domestic violence, domestic violence includes violence between persons who have been spouses as a matter of law, those who have cohabited as spouses notwithstanding the lack of such status as a matter of law, and those who have had an intimate relationship in which they were similarly situated to spouses. We also conclude that, under the statute, once such a domestic relationship has begun, violence in the context of that relationship is domestic regardless of whether the parties terminated their relationship before or after the violence occurred.

## D. Deference to BATF Interpretation

Thus, although BATF's advisory interpretation of the statute and opinion regarding plaintiff did not adjudicate the issues and was not binding on the Commission, we conclude that it reflected a correct interpretation of the Amendment, and, as a result, the Commission applied the correct legal standard to the question of whether the GCA prohibits plaintiff from possessing a firearm. And even assuming, as plaintiff contends, that the Commission erred when it premised its ruling on deference to BATF's advisory interpretation, any such error did not result in an error of law.

## III. Sufficiency of the Evidence and Findings

■■■ To the extent plaintiff argues that there was no competent evidence in the record to support the determination that he was "similarly situated to a spouse," we perceive no error.

Although the Commission may not set aside a hearing officer's findings of facts if they are supported by competent evidence in the record, it is not bound by a hearing officer's findings of ultimate facts or conclusions of law. Commission Rule XII, § 5.E.6; *Blaine v. Moffat County Sch. Dist. re No. 1, supra.*

Here, the hearing officer found that: (1) plaintiff and the victim had a sexual relationship; (2) the relationship was continuous from the summer of 1992 to the summer of 1993; (3) during that time the victim spent most of her evenings at plaintiff's residence; (4) the victim occasionally used plaintiff's credit cards; and (5) some of the furniture in the shared residence was owned by the victim. In addition, plaintiff admitted that he and the victim cohabited.

We conclude that these findings and admissions are sufficient to support the legal conclusion that, prior to the assault, plaintiff and the victim were similarly situated to spouses. Consequently, the Commission did not abuse its discretion when it reversed the

hearing officer's decision based on that conclusion. *See Vukovich v. Civil Serv. Comm'n, supra.*

### IV. Abuse of Discretion

Plaintiff argues that the trial court abused its discretion when it affirmed the Commission's decision. Because we review the Commission's ruling de novo and affirm it, we need not address this contention. *See City of Colorado Springs v. Securcare Self Storage, Inc., supra* (review of a governmental body's decision pursuant to C.R.C.P. 106(a)(4) calls into question the decision of the body itself, not the trial court's determination on review).

### V. Mandamus

 Plaintiff contends that the trial court erred when it did not grant mandamus. We disagree.

In addition to his C.R.C.P. 106 action, plaintiff also filed a declaratory judgment action in United States District Court for the District of Colorado. That court ruled that the Amendment does not apply when the perpetrator and the victim are not similarly situated as spouses at the time of the crime. However, the Tenth Circuit Court of Appeals later reversed and vacated the judgment for lack of jurisdiction. *Woods v. City & County of Denver,* 62 Fed. Appx. 286, 2003 WL 1880635 (10th Cir.2003)(not selected for publication).

Plaintiff argues that Denver was required to reinstate him immediately upon entry of the order of the federal district court, absent a stay of that order. He asserts that, although the Tenth Circuit reversed and vacated the judgment, the district court's interpretation of the Amendment was binding because there was no contrary law during the four years that followed.

Plaintiff cites no authority to support this argument, and we do not find it persuasive.

Because we conclude that the Commission did not err, plaintiff has no clear right to be reinstated, the City has no clear duty to reinstate him, and mandamus is unwarranted.

The order is affirmed.

Judge MARQUEZ and Judge LOEB concur.