**BOARD OF EDUCATION OF WEST YUMA SCHOOL DISTRICT RJ–1, Petitioner,**

v.

**Carol L. FLAMING, Respondent.**

**No. 95SC524.**

Supreme Court of Colorado,
En Banc.

May 19, 1997.

Caplan and Earnest LLC, Richard E. Bump, Allen P. Taggart, W. Stuart Stuller, Boulder, for Petitioner.

Colorado Education Association, Martha R. Houser, Gregory J. Lawler, Sharyn E.

Dreyer, Cathy L. Cooper, Bradley C. Bartels, Denver, for Respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review *Flaming v. Board of Education of West Yuma School District RJ–1*, No. 94CA1418 (Colo.App. June 1, 1995) (not selected for official publication), in which the court of appeals reversed the decision of the Board of Education of the West Yuma School District (the Board) to dismiss Carol Flaming from her position as a non-probationary teacher.[1]

 In *Adams County School District No. 50 v. Heimer*, 919 P.2d 786, 793 (Colo. 1996), we held that a Board of Education's decision to terminate a tenured teacher in the face of a hearing officer's recommendation for retention should be reviewed under the arbitrary, capricious, or legally impermissible standard. Further, while the Board is limited to the evidentiary facts as found by the hearing officer, the resolution of ultimate facts which involve mixed questions of fact and law are within the sole province of the Board.

In the present case, the hearing officer found that the teacher "hit or tapped" a student on the head with a three-foot long wooden pointer because the student was not paying attention. We hold that the Board's conclusion that the teacher's physical intervention was inappropriate and constituted grounds for termination was supported by the hearing officer's findings of evidentiary fact. Therefore, the Board's decision to terminate the teacher was not arbitrary, capri-

cious, or legally impermissible. Accordingly, we reverse the court of appeals.

## I.

Carol Flaming (Flaming) was a tenured music teacher at a primary school in the West Yuma school district. Flaming had worked at the school since the 1976–1977 school year and had consistently received excellent performance ratings throughout her tenure. However, in March 1994, the district superintendent recommended to the Board that Flaming be dismissed for neglect of duty, insubordination, and for other good and just cause. Flaming allegedly struck a child on the head with a wooden pointer because the child was not paying attention. According to the Board, Flaming's behavior warranted dismissal because it was her fourth incident of inappropriate physical discipline and because she was on notice after the third incident that another violation of district policy could result in her termination.

Notice of intent to dismiss and reasons for dismissal were sent to Flaming pursuant to section 22–63–302(2), 9 C.R.S. (1995). Flaming then filed a written notice of objection and requested a hearing pursuant to section 22–63–302(3), 9 C.R.S. (1995). Based on the evidence presented at the hearing, the hearing officer made findings of fact and recommended that Flaming be retained.

The hearing officer's written findings addressed first the discipline policies of the district and the school. The hearing officer determined that the portions of the district's disciplinary code relevant to this case were

---

1. We granted certiorari on the following issues:

 1. Whether the court of appeals, reviewing a school board's decision to dismiss a teacher, erred in holding that insubordination may not vary on a district by district basis and thereby disregarded the substantive content assigned to that term by the district.
 2. Whether the court of appeals erred in holding that if a teacher's failure to comply with a lawful directive is negligent, it can never constitute insubordination.
 3. Whether the court of appeals erred in holding that the hearing officer's recommendation of retention has more support in the record as a whole than the board's order of dismissal.

 4. Whether the court of appeals, upon finding procedural error by the school board, erred in ordering that the teacher be reinstated.

 Issues three and four quoted above were resolved by this court's recent decision in *Adams County School District No. 50 v. Heimer*, 919 P.2d 786 (Colo.1996). However, because the case has been fully briefed and argued before us, judicial economy causes us to review the merits of the termination decision rather than to remand the case to the court of appeals for reconsideration in light of *Heimer*. We reverse the court of appeals on issues one and two although we view the court of appeals' decision as limited to the facts of the case rather than standing for the more sweeping propositions stated in the certiorari issues.

JK–R and JKA. The hearing officer interpreted JKA as providing that in dealing with a disruptive student, a teacher may use "reasonable and appropriate" physical intervention or force as necessary for six specific purposes, one of which is "for the preservation of order."[2] The hearing officer also found that the principal of each school was empowered to adopt policies limiting even further the use of physical intervention or force by a teacher. According to the hearing officer, although there was not a "no touch" rule in place at the school, Flaming was aware that the principals under whom she served opposed the use of physical intervention or force. Flaming also was required to develop and follow her own classroom discipline plan which stated that a first infraction would result in a "warning" and a second infraction would result in a "time out."

The hearing officer found that Flaming had been disciplined by the school's principal for using inappropriate physical interventions on three occasions prior to the incident with the wooden pointer. In 1985 or 1986, Flaming struck a third grade student on the hand with a xylophone stick, and the parent of the child complained upon finding red marks on the child's hand. The hearing officer determined that although no formal action was taken against Flaming as a result of this first incident, the principal discussed with Flaming more appropriate forms of discipline such as the use of a "time out."

Next, the hearing officer found that on March 11, 1986, Flaming pulled the hair of a student because the student had his head on his desk and was not paying attention. As a result of this incident, the principal wrote a formal letter of discipline to Flaming which indicated that such conduct constituted inappropriate physical discipline and that the school followed a "policy of no physical punishment." The hearing officer determined that the principal admonished Flaming in

this letter to "keep [the policy of no physical punishment] in mind when [she] administer[ed] classroom discipline."

As to the third incident, the hearing officer found that on March 12, 1992, Flaming seized a first grade student by the shoulders and backed him up against a chalkboard where he bumped his head. Following this incident, the principal issued a reprimand and informed Flaming that any future failure to follow school or district policies concerning physical intervention, or any failure to follow the guidelines of her own classroom discipline plan, would be considered an act of insubordination.

In all three incidents, the hearing officer found that Flaming's conduct "was contrary to the policies of the District and the School, as well as to the Teacher's own plan on student discipline, and was also contrary to the clear directions of [Flaming's] superiors." With respect to the fourth incident, however, the hearing officer concluded that "the evidence [was] insufficient to show that [Flaming] resorted to inappropriate and unreasonable physical discipline of the student." According to the hearing officer, Flaming was teaching the words of a new song to a third grade class using a three-foot long wooden pointer to direct the children's attention to the words that were written on a chalkboard. After Flaming noticed that one girl had turned to watch someone or something behind her, Flaming hit or tapped the girl on the head with the pointer in order to redirect her attention to the board. Considering the evidence as a whole, the hearing officer found that it did not appear that the child was physically injured. The hearing officer concluded, in part:

> In the most recent incident ... the evidence falls short of showing that [Flaming's] conduct was inappropriate or unreasonable, and there was no evidence presented which would suggest that

2. District policy JKA specifically provides:

In dealing with disruptive students, any person employed by the district may, within the scope of his employment, use reasonable and appropriate physical intervention or force as necessary for the following purposes:
1. To restrain a student from an act of wrongdoing[;]

2. To quell a disturbance threatening physical injury to others[;]
3. To obtain possession of weapons or other dangerous objects upon a student or within the control of a student[;]
4. For the purpose of self-defense[;]
5. For the protection of persons or property[;]
6. For the preservation of order[.]

[Flaming] has not made a good faith effort to comply with the policies of the District, the School, her own plan concerning student discipline since the 1992 episode, or the directions of her superiors.

The superintendent did not sustain by a preponderance of the evidence the grounds alleged for dismissal of [Flaming], those being neglect of duty and insubordination in the form of a willful refusal to obey a reasonable order of a superior. Nor has it been proven that [Flaming] is unfit to teach.

Accordingly, the hearing officer recommended that Flaming be retained.

In reviewing the findings of fact and recommendation of the hearing officer, the Board essentially adopted the evidentiary findings of the hearing officer. However, the Board also examined the record of proceedings and made additional findings of fact that were not included in the hearing officer's written order. Specifically, the Board examined the testimony of the child witnesses to the fourth incident and found, as a matter of evidentiary fact, that the child cried when Flaming struck her. The Board also found that the incident frightened the other children in the class. Based in part on these additional facts, the Board concluded that Flaming had neglected her duty by failing to provide a safe and secure learning environment. The Board also concluded that Flaming's conduct in the last two incidents constituted insubordination because Flaming used inappropriate physical contact despite repeated warnings by her superiors to refrain from using physical force to discipline students. For these reasons, Flaming was dismissed by the Board.

The court of appeals reversed and concluded that the Board's reliance on evidentiary matters not contained within the hearing officer's findings of fact was error. The court of appeals also concluded that, disregarding the Board's additional facts, the hearing officer's findings were insufficient to establish insubordination. Thus, the court of appeals held that the hearing officer's recommendation had more support in the record than the Board's order of dismissal and directed that Flaming be reinstated.

## II.

Teacher dismissal actions are controlled by the Teacher Employment, Compensation, and Dismissal Act of 1990, sections 22–63–101 to –403, 9 C.R.S. (1995) (1990 Act).[3] Pursuant to the 1990 Act, a teacher subject to a recommendation of dismissal may request a hearing before an impartial hearing officer. *See* § 22–63–302(3), 9 C.R.S. (1995). It is the hearing officer's responsibility to hear the evidence, review exhibits, and make written findings of fact. *See* § 22–63–302(8), 9 C.R.S. (1995). The hearing officer is also charged with making a recommendation to the Board that the teacher be retained or dismissed. *See id.*

After the hearing officer issues findings of fact and a recommendation, it is the responsibility of the school board to review those findings and the recommendation, and issue a written order. *See* § 22–63–302(9), 9 C.R.S. (1995). In cases where the Board orders dismissal of the teacher over the hearing officer's recommendation of retention, the statute directs the Board to give reasons for its conclusion which must be supported by the record. *See id.* Under these circumstances, the statute provides that the teacher may seek appellate review in the court of appeals. *See* § 22–63–302(10), 9 C.R.S. (1995).

After the court of appeals' decision in this case, we decided *Adams County School District No. 50 v. Heimer*, 919 P.2d 786 (Colo. 1996). In *Heimer*, we evaluated the appropriate standard of review under the 1990 Act when a teacher is terminated by a school board over a hearing officer's recommenda-

---

**3.** Section 22–63–301, 9 C.R.S. (1995), provides the grounds for dismissal of a non-probationary teacher.

A teacher may be dismissed for physical or mental disability, incompetency, neglect of duty, immorality, unsatisfactory performance, insubordination, the conviction of a felony or the acceptance of a guilty plea, a plea of nolo contendere, or a deferred sentence for a felony, or other good and just cause.
§ 22–63–301, 9 C.R.S. (1995).

tion that the teacher be retained. Section 22–63–302(10)(c) of the 1990 Act provides:

> The action for review shall be based upon the record before the hearing officer. If the decision of the board to dismiss the teacher was in accordance with the recommendation of the hearing officer, the court of appeals shall review such record to determine whether the action of the board was arbitrary or capricious or was legally impermissible. *If the decision of the board to dismiss the teacher was made over the hearing officer's recommendation of retention, the court of appeals shall either affirm the decision of the board or affirm the recommendation of the hearing officer, based upon the court's review of the record as a whole and the court's own judgment as to whether the board's decision or the hearing officer's recommendation has more support in the record as a whole.*

§ 22–63–302(10)(c), 9 C.R.S. (1995) (emphasis added).

The court of appeals held in *Heimer* that in cases where a school board orders a teacher dismissed despite a hearing officer's recommendation to retain the teacher, the 1990 Act required the court of appeals to compare and balance the force of each body's conclusions to determine which conclusion is more supported by the record. *See Heimer v. Board of Educ., Adams County–Westminster Sch. Dist. 50,* 895 P.2d 152, 159 (Colo.App. 1994), *rev'd,* 919 P.2d 786 (Colo.1996). In reversing the decision of the court of appeals, we acknowledged that the underscored language of section 22–63–302 quoted above appears to require the court of appeals to apply "the deferential arbitrary, capricious, or legally impermissible standard of review only in some teacher dismissal proceedings but not in others." *Heimer,* 919 P.2d at 792. We found, however, that such an interpretation of the 1990 Act raised both questions of internal consistency and constitutional difficulties.[4] *See id.* Therefore, despite the confusing language in the statute to the contrary, we held that the 1990 Act required the

court of appeals to review a school board's decision to dismiss a teacher in cases where the hearing officer has recommended retention of the teacher "by the same arbitrary, capricious, or legally impermissible standard applicable to cases wherein a school board's determination to dismiss a teacher coincides with the hearing officer's recommendation." *Id.*

■ We also addressed in *Heimer* whether the language in section 22–63–302(10)(c) directing the court of appeals to review the "record as a whole" required the court to consider raw evidence not included in the hearing officer's findings of fact. We noted that "courts, like the [school] board, [are] ill-equipped to make factual findings based on a 'cold record.'" *Heimer,* 919 P.2d at 794 (quoting *Ricci v. Davis,* 627 P.2d 1111, 1119 (Colo.1981)). We determined that the 1990 Act did not change how a board of education must treat the hearing officer's findings of fact. Therefore, consistent with pre–1990 Act caselaw, we held that unless a party contends that the hearing officer's findings are not supported by substantial evidence, the record for appellate review is limited to the hearing officer's findings of fact and recommendation. *See Heimer,* 919 P.2d at 793. With the *Heimer* analysis in mind, we now turn to the case before us.

### III.

The Board's order articulated three bases for Flaming's dismissal: neglect of duty; insubordination; and other good and just cause. At the court of appeals, the Board argued that even if it improperly relied on additional facts gleaned from the raw evidence, use of such facts only concerned its conclusions as to neglect of duty and other good and just cause for dismissal. The court of appeals found that the additional facts were improperly considered by the Board and, apparently treating the Board's argument as a concession, the court limited its discussion to the Board's claim that Flaming

---

4. We stated in *Heimer* that we had concerns with whether construing section 22–63–302(10)(c) to require the court of appeals to balance the hearing officer's recommendation with the Board's conclusion "would cause an impermissible dele-

gation of the school board's power to the hearing officer." *Heimer,* 919 P.2d at 790, n. 3. We also questioned "whether such a construction might vest legislative authority in the court of appeals violative of separation of powers principles." *Id.*

was guilty of insubordination. It reversed the decision reached by the Board to dismiss Flaming because (1) the Board relied on evidentiary facts not contained in the hearing officer's findings, and because (2) "the hearing officer's recommendation ha[d] more support in [the] record than ... the board's order of dismissal." *Flaming*, No. 94CA1418, slip op. at 12.

▪ As to the court of appeals' first rationale for reversing the Board's order, we agree that it was inappropriate for the Board to make and rely on additional findings of evidentiary fact. Under section 22–63–302(9), it is the responsibility of the school board to review the hearing officer's findings and issue a written order. The statute does not provide that school boards may make additional findings of fact to supplement the hearing officer's written findings. As noted above, school boards are ill-equipped to make evidentiary findings based on the cold record. However, we do not agree that the Board's additional fact-finding caused reversible error in this case.

▪ Under our holding in *Heimer*, the court of appeals is required to determine whether the Board's conclusion was supported by the hearing officer's findings such that the Board's order was not arbitrary, capricious, or legally impermissible. Applying that standard, the court of appeals should have disregarded the Board's additional findings of evidentiary fact, given deference to the Board's final decision, and determined whether that decision to terminate Flaming under any of the stated statutory grounds was supported by the hearing officer's findings. Thus, the court of appeals used an incorrect standard when it concluded that the hearing officer's findings had more support in the record than the Board's conclusion.

Flaming contends that, even under the *Heimer* standard, the decision of the court of appeals should be affirmed. Flaming points out that the hearing officer specifically found that the hit or tap on the student's head was not "unreasonable or inappropriate physical discipline of the child." Flaming contends that this finding must be followed by the Board. Thus, Flaming argues that the Board's order to dismiss Flaming cannot be supported by the hearing officer's findings and was therefore legally impermissible.

▪ A school board is bound by the findings of evidentiary fact made by the hearing officer if those findings are adequately supported by the record. *See Ricci v. Davis*, 627 P.2d 1111, 1117 (Colo.1981); *Blair v. Lovett*, 196 Colo. 118, 123, 582 P.2d 668, 671 (1978). Finding ultimate facts, however, is the exclusive prerogative of elected school boards. *See Ricci*, 627 P.2d at 1118. The distinction between evidentiary facts and ultimate facts is not always clear. *See State Bd. of Med. Exam'rs. v. McCroskey*, 880 P.2d 1188, 1193 (Colo.1994). In the context of teacher dismissal cases, we have defined ultimate facts as those findings that involve conclusions of law or mixed questions of fact and law. *See Ricci*, 627 P.2d at 1118. In contrast, evidentiary facts are the detailed factual and historical findings upon which a legal determination rests. *See deKoevend v. Board of Educ. of West End Sch. Dist. RE–2*, 688 P.2d 219, 225 (Colo.1984); *Ricci*, 627 P.2d at 1119–1120. For example, in this case, the evidentiary facts would include a determination of if and how Flaming struck the child.

Flaming argues that the hearing officer's conclusion that the hit or tap was not unreasonable or inappropriate physical discipline was a finding of evidentiary fact that is binding on the Board. According to Flaming, the hearing officer's determination was not a finding of ultimate fact because it was not stated in terms of the statutory standards for dismissal. As such, Flaming contends that the Board's order of dismissal was not supported by the hearing officer's findings. We disagree. Flaming's proposed distinction between evidentiary facts and ultimate facts is much too narrow and mechanical. While ultimate facts are often stated in the terms of the statutory dismissal standards, that is not always the case.

The distinction between evidentiary facts and ultimate facts has been discussed in greater detail in the context of physician discipline cases. In *State Board of Medical Examiners v. McCroskey*, 880 P.2d 1188 (Colo.1994), we considered whether an ALJ's

conclusion that a doctor had not violated a generally accepted medical practice was an evidentiary fact or an ultimate fact. We noted that "unlike evidentiary facts, ultimate conclusions of fact usually are phrased in the language of the controlling statute or legal standard." *Id.* at 1193. We also stated that ultimate facts "involve a conclusion of law, or at least a mixed question of law and fact, and settle the rights and liabilities of the parties." *Id.* We concluded in *McCroskey* that the ALJ's "finding on the nature and existence of the 'generally accepted standards of medical practice' is a finding of ultimate fact." *Id.* at 1194.

In support of our holding in *McCroskey*, we explained that "a determination of the nature and existence of the 'generally accepted standards of medical practice' is best viewed as a mixed question of law and fact; it is not simply a factual finding of raw historical data." *Id.* The same can be said about the hearing officer's finding in the present case. A determination of whether the touching that occurred between Flaming and the student was reasonable or appropriate required the hearing officer to apply his interpretation of school district policy to the events that he found to have occurred. As such, the hearing officer determined a mixed question of law and fact that "was not simply a factual finding of raw historical data."

In *McCroskey*, we held that the Board of Medical Examiners was solely responsible for defining the practice of medicine. 880 P.2d at 1196. A school board should be accorded the same deference when defining appropriate and reasonable behavior for teachers. As we noted in *Heimer*, school boards have primary responsibility for the hiring and firing of teachers in their school districts. 919 P.2d at 789. While the Board's exercise of its discretion to define grounds for dismissal is subject to judicial review, a reviewing court may not freely substitute its judgment for the Board's appraisal of the harm inflicted on the school community by particular instances of teacher conduct. *See Snyder v. Jefferson County Sch. Dist. R-1*, 842 P.2d 624, 631 (Colo.1992).

As in *McCroskey*, the hearing officer's determination in this case required the applica-

tion of legal principles to the evidentiary facts. Further, the hearing officer's determination "settled the rights and liabilities of the parties" because it was a legal conclusion that essentially precluded Flaming's termination under any of the statutory grounds for dismissal. Therefore, the hearing officer's finding that the touching was not unreasonable and inappropriate physical discipline was a conclusion of ultimate fact which the Board was free to set aside. However, because the hearing officer's findings of evidentiary fact *are* binding on the Board, we now must determine whether the Board's decision to dismiss Flaming for insubordination, neglect of duty, and other good and just cause was arbitrary, capricious, or legally impermissible as applied to those facts. We will address each statutory ground for dismissal in turn.

### A.

This court has defined insubordination as "a willful or intentional refusal to obey a reasonable order of a lawful superior on a particular occasion." *Ware v. Morgan County Sch. Dist. No. RE-3*, 748 P.2d 1295, 1300 (Colo.1988). In this case, the court of appeals stated that an inadvertent or negligent failure to obey an order could not constitute insubordination. *See Flaming*, No. 94CA1418, slip op. at 9. Under the standard articulated by the court of appeals, intentional conduct does not constitute insubordination unless that conduct was deliberately executed with the purpose of contravening prior directives. Flaming similarly argues to this court that her conduct did not constitute a "willful or intentional refusal" to obey school district policy and the directives of her principal because her alleged failure to follow the directives of her superiors was unintentional. We find, however, that Flaming and the court of appeals have misinterpreted our definition of insubordination as articulated in *Ware*.

■ *Ware* concerned a music teacher who had been instructed to refrain from using obscenities. A hearing officer determined that, despite the directive from the teacher's principal and the district superintendent, the teacher again used profanity in front of stu-

dents. *See Ware*, 748 P.2d at 1299. The hearing officer also found that the teacher's use of such language was not "inadvertent or accidental." *Id.* We affirmed the school board's decision to dismiss the teacher for insubordination without any inquiry into whether the teacher intended to violate the prior directives. *Id.* at 1301. Thus, the standard articulated in *Ware* simply requires intentional conduct. Insubordination does not require proof that the teacher specifically intended to violate the directions of superiors.

In this case, the hearing officer found that: (1) Flaming becomes frustrated by a child who does not immediately "get it," a child with a poor attention span, a child who acts out, and a child with psychological problems and/or learning disabilities; (2) Flaming previously had been disciplined by her principal for using physical intervention contrary to the policies of the district and the school; (3) Flaming had been told that failure to follow the policies of the district and the school would be considered insubordination; (4) Flaming also had been required to follow her own discipline plan which indicated that the penalty for infractions would be a "warning" and then a "time out"; and (5) on January 19, 1994, Flaming hit or tapped a child on the head with a three-foot long wooden pointer because the child was not paying attention. Moreover, there is no dispute that Flaming *intentionally* struck the child on the head. The hearing officer's findings indicate that Flaming herself testified that she struck the child "in an attempt to redirect her attention to the board."

The hearing officer's findings clearly support the Board's ultimate conclusion that Flaming disregarded the express directions of her superiors concerning the use of force in the classroom. Further, the hearing officer's conclusion concerning the appropriateness or reasonableness of the hit or tap was a conclusion of ultimate fact and was not binding on the Board. Therefore, we hold that the Board's decision to terminate Flaming for insubordination was not arbitrary, capricious, or legally impermissible.

### B.

While it was not addressed in the court of appeals' decision, we find that the Board's order of dismissal for neglect of duty was also supported by the hearing officer's findings of evidentiary fact. Neglect of duty "occurs when a teacher fails to carry out his or her obligations and responsibilities in connection with classroom and other school sponsored activities." *Blaine v. Moffat County Sch. Dist. No. 1*, 748 P.2d 1280, 1292 (Colo.1988). In this case, Flaming's duties necessarily included disciplining students consistent with district policy, school policy, and her own rules for classroom management.

In making the determination that Flaming neglected her duties, the Board properly considered her prior failures to comply with applicable discipline policies. *See DeKoevend v. Board of Educ. of West End Sch. Dist. RE–2*, 653 P.2d 743, 745 (Colo.App.1982), *rev'd on other grounds*, 688 P.2d 219 (Colo.1984). The hearing officer's findings regarding Flaming's past incidents of inappropriate physical discipline show that Flaming was not always able to safely supervise difficult or inattentive students. Striking the third grader on the head with a pointer was yet another example of Flaming's failure "to provide a safe and secure learning environment." Therefore, the Board's decision to dismiss Flaming for neglect of duty was not arbitrary, capricious, or legally impermissible.

### C.

The court of appeals also failed to address whether Flaming's dismissal for other good and just cause was supported by the hearing officer's evidentiary findings. Other good and just cause includes "any cause bearing a reasonable relationship to the teacher's fitness to discharge her duties" or "which materially and substantially affects performance." *Fredrickson v. Denver Pub. Sch. Dist. No. 1*, 819 P.2d 1068, 1073 (Colo. App.1991). In *Weissman v. Board of Education of Jefferson County School District No. R–1*, 190 Colo. 414, 547 P.2d 1267 (1976), we considered whether a teacher's conduct

indicated unfitness to teach within the context of dismissal for immorality. We stated that in making a determination of fitness to teach, a school board may properly consider the age and maturity of the teacher's students, the likelihood that the teacher's conduct had an adverse affect on those students, and the likelihood that the conduct would be repeated. *See Weissman,* 190 Colo. at 421, 547 P.2d at 1273.

■ The *Weissman* fitness-to-teach criteria also have been applied in cases involving dismissal for other good and just cause. *See Kerin v. Board of Educ., Lamar Sch. Dist. No. RE–2,* 860 P.2d 574, 582 (Colo.App. 1993). As we earlier noted, Flaming has exhibited a low frustration tolerance with certain primary age students. On at least four occasions, Flaming's inability to control her frustration led to the use of inappropriate physical intervention. Taking into account the grade level of Flaming's students, the likelihood that they were adversely affected by her behavior, and the strong possibility that Flaming might resort to inappropriate physical intervention in the future, the Board's decision to dismiss Flaming for other good and just cause was not arbitrary, capricious, or legally impermissible.

### IV.

The hearing officer's findings of evidentiary fact establish that Flaming hit or tapped a student with a three-foot long wooden pointer in order to get the student's attention. The hearing officer's findings also establish that Flaming had been warned on previous occasions to refrain from the use of physical discipline and to follow her own discipline plan. While we agree that the Board erred when it relied on its own findings that the child cried and that the other children in the class were frightened, the court of appeals was still required under *Heimer* to determine whether the Board's order of dismissal was supported by the hearing officer's findings of evidentiary fact. Moreover, the Board was not bound by the hearing officer's finding of ultimate fact that the hit or tap was not unreasonable or inappropriate physical discipline. Applying *Heimer* 's deferential standard, we find that the Board's order

of dismissal was supported by the hearing officer's findings of evidentiary fact. Accordingly, we reverse the decision of the court of appeals and remand the case to that court to reinstate the Board's order of dismissal.

KOURLIS, J., does not participate.