2015 CO 66

Cathy RITZERT, Petitioner,

v.

BOARD OF EDUCATION OF the
ACADEMY SCHOOL DISTRICT
NO. 20, Respondent.

Supreme Court Case No. 13SC930

Supreme Court of Colorado.

November 23, 2015

Attorneys for Petitioner: Colorado Education Association, Charles F. Kaiser, Denver, Colorado.

Attorneys for Respondent: Caplan and Earnest LLC, W. Stuart Stuller, Boulder, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶1 The petitioner, Cathy Ritzert, has been a teacher for more than twenty years. During the events at issue here, Academy School District No. 20 ("the District") employed her at Air Academy High School in Colorado Springs teaching children with severe special needs.

¶2 After receiving a complaint about Ritzert from a student's parents, the District placed her on paid administrative leave and told her that it would recommend her dismissal to the District's Board of Education ("the Board") unless she resigned. She refused.

¶3 After several months passed without the District acting on its pledge to fire her, and with another school year looming, Ritzert eventually took a new job teaching special needs students in a neighboring district. She claims that she did this to mitigate her damages. She still wanted the District to prove it had a legitimate basis for terminating her. So again, she refused to quit.

¶4 Despite telling Ritzert that she would be fired and encouraging her to look for other work—and despite having done nothing in over three months to suggest she would be asked to return in any capacity—the District changed course. Once it discovered she had started the new job, it suddenly ordered her to report for work as a floating substitute. When Ritzert did not comply, the District initiated formal dismissal proceedings against her, claiming in part that her refusal to return to work constituted insubordination.

¶5 The Teacher Employment, Compensation, and Dismissal Act of 1990 ("TECDA"), §§ 22–63–101 to –403, C.R.S. (2015), sets forth the process for dismissing a nonprobationary public school teacher such as Ritzert. It enumerates grounds for dismissal and gives the teacher notice and an opportunity to be heard by a neutral hearing officer who is tasked with making findings of historical fact and findings of ultimate fact. When the allegation is insubordination, that officer must consider whether the teacher has intentionally refused to obey a "reasonable order." While the hearing officer makes a recommendation, the Board makes the final administrative decision to dismiss, retain, or place the teacher on probation. But it must do so based on the evidentiary findings of the hearing officer.

¶6 The hearing officer recommended that Ritzert be retained, finding in part that the District's insubordination allegation was pretextual and unreasonable under the circumstances. The Board dismissed Ritzert for insubordination anyway. In doing so, it said nothing about the complaint that triggered placing her on leave in the first place.

¶7 We hold that under TECDA whether a school district's order is reasonable is a finding of ultimate fact within the discretion of the governing school board. Still, that finding must be fully warranted by the hearing officer's evidentiary findings of fact. Thus, a board must assess reasonableness on a case-by-case basis after consideration of all the facts found by the hearing officer. Because the Board abdicated that responsibility here, we conclude that its decision to dismiss Ritzert for insubordination on these facts was arbitrary and capricious. Therefore, we reverse the judgment of the court of appeals and remand this case to the Board to reinstate Ritzert.

## I. Facts and Procedural History

¶8 Ritzert taught in the District from 1991 until the Board dismissed her in 2013. She obtained tenure status in 1994, and, in 1999, she began teaching severe special needs students at Air Academy High School in Colorado Springs.

¶9 In February 2012, the parents of N.S., an autistic and nonverbal child, complained that Air Academy was failing to provide N.S. with the appropriate level of support to meet his educational needs. N.S.'s parents also complained that Ritzert had improperly reduced the number of service hours for his

federally mandated individualized education program.[1] Though Ritzert had received excellent reviews, the complaints from N.S.'s parents caused the school to question whether she was providing adequate accommodations for special education students in compliance with federal law.

¶ 10 On May 10, 2012, the District's Assistant Superintendent for Human Resources, Dr. David Peak, placed Ritzert on paid administrative leave. The same day—and again two days later—Peak asked Ritzert to resign. If she refused, he told her, the Board would terminate her at its June meeting. Warning her that resignation would be better for her than termination, he also suggested that she begin looking for employment elsewhere. About the same time, Air Academy's principal, Toria McGill, told Ritzert that she would not be returning to Air Academy from leave. Ritzert did not resign.

¶ 11 Despite not recommending Ritzert's dismissal at the Board's June, July, or August meetings, neither Peak, McGill, nor any other District employee gave Ritzert any indication that the District's intention to recommend her termination had changed or that the District might summon her back to work. She remained on paid leave during this time. But nothing had happened to change her belief that her dismissal was imminent. Therefore, she searched for new work.

¶ 12 On August 3, 2012, Ritzert signed a contract as a special education teacher with the neighboring Falcon School District ("Falcon"). She did not resign from her position at Air Academy. The District learned of her employment and, on August 10, inquired about her intentions. Notably, August 10 was also the District's teacher-report date, yet the District had not asked Ritzert to return in any capacity, nor had it suggested it might.

¶ 13 On August 14, 2012, Ritzert's attorney informed the District that Ritzert took the job with Falcon to mitigate her damages in the event the Board dismissed her. Ritzert offered to receive only the difference between what she was earning at Falcon and what she had been earning with the District until the District decided whether it would act on its months-old pledge to fire her. She also apprised the District that if she prevailed in a dismissal proceeding, she would give Falcon the statutorily required thirty-day notice and return to work for the District.

¶ 14 Despite all of this, Peak called Ritzert on August 20 and left a voicemail ordering her back to work as a floating substitute. The next day, he wrote her a letter insisting that she resign from Air Academy or report for duty. He also upped the stakes by telling her that if she did neither, the District would not only recommend her dismissal at the Board's upcoming September meeting, but it would also ask the State Department of Education to suspend her teaching license,[2] a threat which it carried out. In addition, Peak warned her that the District could seek to recover wages for the period of time in which she did not work as a substitute.

¶ 15 Rather than simply mailing the resign-or-report letter to Ritzert, the District arranged for in-person delivery at Ritzert's new school, by a man whom the hearing officer later described as "physically imposing." The following week, the District had another letter delivered to Ritzert at the new school, again instructing her to return to the District as a floating substitute. The letter informed her that if she did not return by September 5, the District would assume she had abandoned her teaching position. Ritzert did not return, and on September 6, the District's superintendent filed formal dismissal charges with the Board, recommend-

1. An "individualized education program," or "IEP," is a written statement for a child with a disability that is developed to meet the child's educational needs. § 22–20–103(15), C.R.S. (2015). An IEP includes the educational standards the child must achieve, the special education services the school and district will provide to assist the child in achieving those standards, and the number of hours per week the child will receive the services. *See generally* § 22–20–108, C.R.S. (2015).

2. "[T]he department of education may suspend a license ... when the holder, without good cause, resigns or abandons his or her contracted position with a school district...." § 22–60.5–107(7), C.R.S. (2015).

ing that it dismiss her for insubordination, neglect of duty, and other good and just cause. *See* §§ 22–63–301, –302.

¶16 Per TECDA, Ritzert requested a hearing before an impartial hearing officer, who recommended that she be retained. *See* § 22–63–302(3) (permitting a teacher who objects to the grounds given for a dismissal to request a hearing). The hearing officer concluded that the District's order for Ritzert to return to work was unreasonable because it was simply a pretext to fire her: "[The District's] decision to order her back to duty was made . . . with an eye to developing an additional basis to dismiss her for insubordination" because it "had to have known" she would be forced to choose between abandoning her new job and students and disobeying the District's directive. The hearing officer identified several facts demonstrating the District did not want her back, thus revealing the order's pretextual nature:

- The District's lack of interest in having her come back to work until it learned she had found other employment;
- its attempts to convince her to resign and to avoid a public hearing;
- its need to tell her that it was going to try to have her license sanctioned;
- its attempt to have her license sanctioned; and
- its efforts to embarrass and intimidate her at her new workplace.

The hearing officer found that Ritzert was not insubordinate for failing to comply with the District's order to return to work.[3] He rejected the Board's neglect of duty claims and further concluded that Ritzert had not given the District any good and just cause for termination and found her decision to seek employment elsewhere understandable because she had "every reason to believe that firing was imminent." In its opening brief, the Board acknowledges that it was reasonable for Ritzert to seek new employment

because "[t]his is precisely what the [Assistant Superintendent for Human Resources] counseled her to do prior to the start of summer vacation."[4]

¶17 Despite the hearing officer's recommendation, the Board concluded that Ritzert was insubordinate. The Board determined that it was not bound by the hearing officer's conclusion that the District's order was unreasonable. To the contrary, the Board decided: "[I]t is more than reasonable to direct a teacher who is currently employed and being compensated by the District to report for duty, including . . . to return to duty from a period of administrative leave with pay." In the Board's estimation, the "difficult choice" Ritzert faced did not render the order unreasonable. Concluding that Ritzert refused to comply with the District's reasonable order to return to work, the Board terminated her solely for insubordination. It did not discuss the District's charges of neglect of duty or good and just cause.

¶18 Ritzert appealed. A split panel of the court of appeals affirmed the Board's decision, holding that the decision was not arbitrary, capricious, or legally impermissible. After holding that the reasonableness of the order was an ultimate finding of fact, the majority concluded:

> The Board implicitly construed the District policy as follows: an employee who is placed on paid administrative leave must be ready to return to work when ordered to do so by his or her superior and may not hold another job that would conflict with his or her normal work schedule.

*Ritzert v. Bd. of Educ. of the Acad. Sch. Dist. No. 20*, No. 13CA580, slip op. at 16 (Colo. App. Oct. 17, 2013). While the majority found it "regrettable that twenty years of service by Ritzert ended as it did," it held that the District's course of action was reasonable and the hearing officer's findings

---

3. For purposes of clarity and brevity, the District's two letters and phone call to Ritzert ordering her back to work will be collectively referred to as the "District's order."

4. Though an appellate court must limit its review of a school board's action to the hearing officer's findings of fact and recommendation, *Adams Cty.*

*Sch. Dist. No. 50 v. Heimer*, 919 P.2d 786, 794 (Colo. 1996), we consider the Board's acknowledgment to be a judicial admission, conclusive on the Board for purposes of this proceeding, *see Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo. 1986).

"clearly support" the Board's ultimate conclusion to that effect. *See id.* at 17.

¶ 19 In dissent, Judge Fox defined "reasonable" as "[f]air, proper, or moderate under the circumstances" and determined the order was unreasonable because the District issued it only "after leaving Ritzert in limbo the entire summer and after learning of her employment with Falcon...." *Id.* at 25 (Fox, J., concurring in part and dissenting in part) (quoting *Black's Law Dictionary* 1379 (9th ed. 2009)). In her view, the Board's decision was arbitrary because it based the dismissal on an "alleged" violation of District policy and ignored both the requirement that the order be reasonable and the "unchallenged facts [that] amply support the hearing officer's determination" that the order was unreasonable. *Id.* at 24–26. Among these unchallenged facts, she noted, was the hearing officer's finding that the District's order was "pretextual to firing [Ritzert]." *Id.* at 23.

¶ 20 Ritzert appealed, and we granted certiorari.[5]

## II. Analysis

¶ 21 We first lay out the principles that govern teacher dismissal proceedings in Colorado and the standard of review under which appellate courts consider the findings and conclusions of hearing officers and school boards in these proceedings. We then resolve whether the hearing officer's conclusion about the reasonableness of the District's order was binding on the Board. We agree with the Board that it was not. Finally, we assess whether the Board's decision to dismiss Ritzert for insubordination was arbitrary or capricious, or legally impermissible. Because the Board's ultimate finding of reasonableness was not fully warranted by the

hearing officer's evidentiary findings, and was not made in consideration of the underlying circumstances in Ritzert's case, we conclude that the Board's decision to dismiss Ritzert for insubordination was arbitrary and capricious.

### A. Standard of Review

¶ 22 The Colorado Constitution empowers local school boards to administer school districts, a task which includes hiring and firing teachers. Colo. Const. art. IX, § 15; *see Bd. of Educ. of W. Yuma Sch. Dist. RJ–1 v. Flaming,* 938 P.2d 151, 158 (Colo. 1997). TECDA specifies the grounds for which a school board may dismiss a teacher, thereby balancing a school board's substantial discretion over personnel decisions with a teacher's right to avoid arbitrary termination:

> A teacher may be dismissed for physical or mental disability, incompetency, neglect of duty, immorality, unsatisfactory performance, insubordination, the conviction of a felony or the acceptance of a guilty plea, a plea of nolo contendere, or a deferred sentence for a felony, or other good and just cause.

§ 22–63–301. TECDA also achieves this balance by establishing a bifurcated dismissal proceeding in which a neutral hearing officer presides over the first proceeding to guarantee the teacher has an impartial fact-finder and to ensure the fair and responsible adjudication of allegations of misconduct. *See Blaine v. Moffat Cty. Sch. Dist. Re No. 1,* 748 P.2d 1280, 1286 (Colo. 1988) (citing *Blair v. Lovett,* 196 Colo. 118, 582 P.2d 668, 671 (1978)).

¶ 23 Dismissal proceedings commence when a school district's chief administrative

---

5. We granted certiorari to review the following issues:
   1. Whether an order given as a pretext to develop an additional ground to fire a teacher, which was impossible or impractical for the teacher to comply with, was reasonable for purposes of firing the teacher for insubordination.
   2. Whether a teacher who is informed that she is being placed on open-ended leave pending the filing of dismissal charges, and that she will not be allowed to return to work for the

school district planning to fire her, may mitigate her damages by accepting a job with a second school district, so long as she offers to only accept the difference in pay between what she makes at the second district and her salary from the district seeking her dismissal pending resolution of the dismissal charges.
   3. Whether the reasonableness of the teacher's mitigation of damages and the supervisor's orders are matters of fact, law, or school board discretion.

officer recommends that the school board dismiss a teacher based on one or more of the enumerated grounds. § 22–63–302(2). If the teacher objects to the grounds given for the dismissal, she may request a hearing with an impartial hearing officer. § 22–63–302(3)–(4)(a). After reviewing the evidence and testimony, the hearing officer makes written findings of fact and recommends to the school board that the teacher be dismissed or retained. § 22–63–302(8).

¶ 24 The school board is not bound by the hearing officer's recommendation, but it is bound by the hearing officer's findings of evidentiary fact. *Blair*, 582 P.2d at 673. By contrast, the board is not bound by ultimate facts, which are findings of law or mixed questions of fact and law, often stated in terms of a statutory standard. *Flaming*, 938 P.2d at 157. Thus, the board may dismiss, retain, or place the teacher on probation irrespective of the hearing officer's recommendation, but its decision to do so must be supported by the hearing officer's findings of fact. § 22–63–302(9).

¶ 25 By making the hearing officer's role in taking and reviewing evidence more than just advisory, the bifurcated dismissal proceeding ensures the "legislative attempt to provide a neutral forum for presentation of evidence will not be merely illusory." *Blair*, 582 P.2d at 671. It prevents "the heightened risk of biased and inaccurate fact-finding entailed by allowing a school board to overrule or supplement the hearing [officer's] findings of evidentiary fact...." *Ricci v. Davis*, 627 P.2d 1111, 1116 (Colo. 1981).

¶ 26 If the board chooses to dismiss the teacher, the teacher may then seek review in the court of appeals. § 22–63–302(10)(a). Review is expedited and given precedence over all but two other categories of civil cases. *Id.* The reviewing court determines whether the board's decision was arbitrary, capricious, or legally impermissible, § 22–63–302(10)(c), based on a record limited to the hearing officer's findings of fact and recommendation, *Adams Cty. Sch. Dist. No. 50 v. Heimer*, 919 P.2d 786, 794 (Colo. 1996).

¶ 27 We have repeatedly held that to survive this arbitrary and capricious review, a school board's findings of ultimate fact must be "fully warranted" by a hearing officer's findings of evidentiary fact. *See, e.g., Blaine*, 748 P.2d at 1288 ("While the board in making findings of ultimate fact is vested with considerable discretion ..., the statutory scheme contemplates that such ultimate findings must be *fully warranted* by the hearing officer's findings of evidentiary fact." (emphasis added)); *deKoevend v. Bd. of Educ. of W. End Sch. Dist. RE–2*, 688 P.2d 219, 225–26 (Colo. 1984) ("While the board in the exercise of its ultimate fact-finding function is vested with ' "considerable discretion" to fix the precise substantive content' of the statutory grounds for dismissal, the board's findings of ultimate fact must be *fully warranted* by the evidentiary findings of the hearing officer." (emphasis added) (quoting *Ricci*, 627 P.2d at 1118)); *Ricci*, 627 P.2d at 1117 ("[A] board's ultimate findings must be *fully warranted* by the basic facts embodied in the [hearing officer's] formal, written statement of [his] findings." (emphasis added)).

¶ 28 In reaching its findings of ultimate fact, the board also is limited to those evidentiary facts contained in the hearing officer's written findings; it may not deduce its own from other sources. *See Ricci*, 627 P.2d at 1117 ("A board may not usurp the [hearing officer]'s exclusive authority to find evidentiary facts by basing its conclusions of ultimate fact in whole or in part on 'raw' evidence...."). If the board determines that the hearing officer's findings are insufficient to allow it to make its ultimate findings of fact, the board must remand the matter to the hearing officer to make additional findings. *Blair*, 582 P.2d at 671.

## B. "Reasonableness" Is a Finding of Ultimate Fact

¶ 29 TECDA permits a school board to terminate a teacher for "insubordination" but does not define the term. § 22–63–301. This court has defined it as "a willful or intentional refusal to obey *a reasonable order* of a lawful superior on a particular occasion." *Ware v. Morgan Cty. Sch. Dist. No. RE–3*, 748 P.2d 1295, 1300 (Colo. 1988) (emphasis added). Because it is undisputed that Rit-

zert intentionally refused to comply with the District's order, whether her conduct amounted to insubordination turns on whether the order was "reasonable." The hearing officer found that the order was not reasonable. The Board disagreed and concluded that it was. Because a school board is bound by a hearing officer's evidentiary but not ultimate findings of fact, *Flaming,* 938 P.2d at 157, we begin our analysis by determining into which category of fact reasonableness falls. In this context, under TECDA, we conclude that reasonableness is a finding of ultimate fact.

¶ 30 The line between ultimate facts and evidentiary facts is sometimes blurry. *See id.; State Bd. of Med. Exam'rs v. McCroskey,* 880 P.2d 1188, 1193 (Colo. 1994). In the context of teacher dismissals, we have stated "[a]n ultimate finding may be and usually is mixed with ideas of law or policy.... 'The ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact.'" *Ricci,* 627 P.2d at 1118 (quoting 2 K. Davis, *Administrative Law Treatise* § 16.06 (1958)); *see also McCroskey,* 880 P.2d at 1193 (stating that ultimate findings "involve a conclusion of law, or at least a mixed question of law and fact"). An ultimate finding "settle[s] the rights and liabilities of the parties." *McCroskey,* 880 P.2d at 1193. Evidentiary facts, on the other hand, detail factual and historical findings on which an ultimate fact rests. *Flaming,* 938 P.2d at 157; *Blair,* 582 P.2d at 672 n.13.

¶ 31 Here, the hearing officer's determination whether the District's order was reasonable did not merely detail a factual and historical finding but instead required the application of his understanding of District policy to the events that he found had occurred, creating a mixed question of law and fact. *See Flaming,* 938 P.2d at 158 (concluding that determination whether the teacher's conduct was reasonable was a finding of ultimate fact because it "required the hearing officer to apply his interpretation of school district policy to the events that he found to have occurred").

¶ 32 Furthermore, this court has previously determined that insubordination is a finding of ultimate fact, *see Ware,* 748 P.2d at 1300, which is "the exclusive prerogative of elected school boards," *Ricci,* 627 P.2d at 1118. In *Flaming,* we held that school boards "should be accorded ... deference when defining appropriate and reasonable behavior for teachers." 938 P.2d at 158. We therefore agree with the Board that the reasonableness of the District's order was an issue of ultimate fact and one that the Board was free to disregard, provided it was not arbitrary or capricious in doing so.

### C. The Board's Reasonableness Determination Was Arbitrary and Capricious

■ ¶ 33 Because we have determined that the reasonableness of the District's order is a finding of ultimate fact, we must give deference to the Board's conclusion regarding reasonableness. *See Blaine,* 748 P.2d at 1290 (explaining that school boards are vested with authority to reject a hearing officer's findings of ultimate fact and substitute their own). That does not mean, however, that the Board's discretion is unfettered. Where a school board rejects a hearing officer's ultimate findings and recommendation and substitutes its own, those new findings must be "fully warranted by the evidentiary findings of the hearing officer." *Id.*

¶ 34 Here, the Board rejected the hearing officer's finding that the District's order was unreasonable and concluded that it was reasonable. But the Board reached this result for reasons independent of—and not justified by any of—the hearing officer's evidentiary findings, contrary to the standard articulated by this court. The Board also failed to make its determination in consideration of all of the hearing officer's findings, ignoring relevant underlying circumstances. We therefore hold that the Board's ultimate finding of reasonableness was arbitrary and capricious.

### 1. The Board's Ultimate Reasonableness Finding Was Not Fully Warranted by the Hearing Officer's Evidentiary Findings

¶ 35 The Board, reversing the hearing officer's conclusion on reasonableness, was required to justify its determination with the hearing officer's evidentiary findings. In-

stead, the Board supported its determination with claims regarding Ritzert's contractual obligations to return to duty even if she was going to be dismissed, none of which were based in the hearing officer's findings. The Board failed to provide any evidence—beyond its own opinions—of the rights and obligations of a district employee while on administrative leave. Further, this court's own review of the hearing officer's decision reveals no findings of evidentiary fact that would support the Board's determination regarding those rights and obligations.

¶ 36 The court of appeals held that the Board could "implicitly construe[ ]" the District's policy to find its order reasonable, *Ritzert,* slip op. at 16, but our precedent is clear that a school board may construe only those evidentiary facts found by the hearing officer. In other words, there must be a clear basis in the four corners of the hearing officer's written findings supporting the school board's conclusion. *See Ricci,* 627 P.2d at 1117. If a school board determines that the hearing officer's findings are insufficient to enable it to reach a conclusion, it must remand the matter for additional findings; it may not simply announce its own. *Blair,* 582 P.2d at 671–72.

¶ 37 Here, there is no record evidence of a policy governing a teacher's continuing obligations when put on paid leave, particularly where a district informs her that it intends for the leave to be permanent, does not desire her return, and encourages her to seek another job. We contrast these circumstances with *Blaine,* in which we affirmed a school board's dismissal of a teacher for drinking alcohol with cheerleaders she was chaperoning. 748 P.2d at 1283–84. The school board had a written and well-disseminated policy prohibiting students from using or possessing alcohol at school-sponsored events, and it required teachers to enforce the policy. *Id.* at 1283 & n.3. In its dismissal order, the board stated Blaine knew about the policy and about her duty to enforce it. *Id.* at 1285. While we agreed with Blaine that the hearing officer did not make any specific evidentiary findings about the policy, we concluded that the board did not err in relying on it because: (1) as head cheerlead-

er sponsor, Blaine was presumed to know this particular policy; (2) the hearing officer found that Blaine told the students she could be disciplined for their conduct, which was "tantamount to a finding that [she] knew of the policy and her responsibility for its enforcement"; and (3) Blaine admitted to knowing the policy in her testimony. *Id.* at 1293–94. Therefore, we held that the board did not abuse its discretion when it found that her conduct constituted neglect of duty. *Id.* at 1294.

¶ 38 Similarly, in *Flaming,* we affirmed a school board's dismissal of a teacher for insubordination despite the hearing officer's recommendation that she be retained. *See* 938 P.2d at 153. While the board had improperly made and relied on its own findings of evidentiary fact in addition to those made by the hearing officer, we concluded that its decision to terminate the teacher was not arbitrary or capricious because it was clearly supported by the hearing officer's findings alone. *Id.* at 157, 159. Those findings, which we detailed in our opinion, included relevant district policy and Flaming's knowledge of that policy. *Id.* at 159.

¶ 39 Here, unlike in *Blaine* and *Flaming,* there is no evidence to suggest common knowledge of any District policy regarding teachers' rights and obligations while on administrative leave. We therefore have no basis for concluding that the Board, silent regarding the evidentiary support for its reasonableness determination, did not exceed its authority.

¶ 40 There is no contractual provision governing these circumstances either. While Ritzert's contract is not in the record, a Salary Verification and Intent to Return Form is. It states, in relevant part, that a teacher owes a school district damages:

> [I]f [the teacher] *abandons, breaches, or otherwise refuses to perform services for this school district* ... unless the teacher has given written notice to the Board ... on or before July 1, 2012 that the teacher will not fulfill the obligations of [the teacher's] appointment during the succeeding academic year or after the beginning of the academic year....

(emphasis added).[6] The Board in its dismissal order thus framed Ritzert's dismissal according to basic contractual principles:

> [I]t is more than reasonable to direct a teacher who is currently employed and being compensated by the District to report for duty, including, as in this case, to return to duty from a period of administrative leave with pay.... [Ritzert] did not have the right to refuse to return to work or to set the terms and conditions upon which she would return to work.

The Board did not believe "a teacher on administrative leave with pay has the right to obtain other employment, continue her employment with the District, and refuse to return to work at the District even if she is going to be dismissed." That may be true, but the question here is not simply whether it was reasonable for the District to order Ritzert back to work even if it was going to dismiss her. The question is whether it was reasonable for the District to order her to return to work after it not only told her it was going to fire her, but also advised her to look for new employment because it would not ask her back.

¶ 41 Indeed, the hearing officer concluded that Ritzert "had *no basis* to know that the School District would be ordering her back as a substitute" (emphasis added). Inherent in this conclusion is the lack of a clear policy—express or implied—that would allow the hearing officer to conclude the District's order was reasonable. Without some reference to the hearing officer's findings to support the Board's conclusion, we are left to speculate whether the Board's contractual argument was based on evidence considered and rejected by the hearing officer. *See deKoevend*, 688 P.2d at 227; *see also Blaine*, 748 P.2d at 1291 (explaining that requiring school board's ultimate findings to be fully warranted by hearing officer's evidentiary findings "fosters meaningful judicial review ... by requiring that the grounds for any finding of ultimate fact by the board be clearly disclosed and adequately supported by the record").

¶ 42 The Board's justifications for its findings were announced for the first time in its Order of Dismissal and have no discernible basis in the hearing officer's findings. We therefore conclude that the Board's decision in this case was not "fully warranted" by the hearing officer's findings and was arbitrary and capricious.

## 2. Determining "Reasonableness" Requires Consideration of All Facts Found by the Hearing Officer

¶ 43 The Board's failure to ground its findings of ultimate fact in the hearing officer's evidentiary findings, as determined above, means that its reasonableness determination was not "fully warranted" by those findings and was therefore arbitrary and capricious. "Fully warranted" cannot solely mean based exclusively on the hearing officer's findings and incorporating no others; it must also encompass a requirement to consider the entirety of the hearing officer's evidentiary determinations. Thus, in order for a school board's reasonableness determination to survive arbitrary and capricious review, it must be made in consideration of all the hearing officer's evidentiary findings.

¶ 44 In other contexts, we have recognized that an inquiry into what is reasonable necessarily requires an examination of the underlying circumstances. *See, e.g., Herr v. People*, ·198 P.3d 108, 114 (Colo. 2008) ("What constitutes a reasonable effort [to secure a ruling on a Crim. P. 35(b) motion] by the defendant is dependent on the *unique circumstances of the case*." (emphasis added)); *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984) ("[T]he standard applicable to establish the tort of bad faith remains one of reasonableness *under the circumstances*." (emphasis added)); *Spensieri v. Farmers All. Mut. Ins. Co.*, 804 P.2d 268, 270 (Colo. App. 1990) (holding that when an attorney fee award is made under a statute that does not define "reasonable," the award should be determined "*in light of all circumstances*" (emphasis added)). Consistent with these cases, *Black's Law Dictionary* defines "reasonable" as "[f]air, proper, or moderate

---

6. The form instructs the teacher to sign and return it to the principal's secretary by May 13, 2012. Ritzert signed the form, and it is dated August 31, 2012.

*under the circumstances*; sensible." 1456 (10th ed. 2014) (emphasis added).

¶ 45 Importing these general guidelines into the present inquiry, we conclude that a board cannot appraise reasonableness in a vacuum, turning a blind eye to the attending circumstances or entertaining only those facts that allow it to achieve a preordained result. The Board's dismissal order here does both.

¶ 46 First, the Board's dismissal order is contrary to the hearing officer's finding that the District's order was pretextual and made "with an eye to developing an additional basis to dismiss [Ritzert] for insubordination." The hearing officer concluded that the District, faced with having to prove the actual and more substantial charges of neglect of duty and other good and just cause, seized on the opportunity to tack on the insubordination charge when it learned about Ritzert's new employment.

¶ 47 *Black's Law Dictionary* defines "pretext" as a "false or weak reason or motive advanced to hide the actual or strong reason or motive." 1380. Here, it is evident that the hearing officer found the insubordination charge to be a false or weak reason justifying Ritzert's dismissal in light of the District's "overall conduct toward [her]" and the limited number of grounds for dismissal specified under TECDA.

¶ 48 This finding is not speculation or a mere expression of disapproval for how the Board handled Ritzert's situation. The hearing officer made this finding after he considered the entire constellation of facts, including the testimony from the District's witnesses and the evidence of its collective actions leading up to Ritzert's noncompliance. The finding is an inference based on a credibility determination that the hearing officer was both empowered and expected to make as a neutral adjudicator. *deKoevend,* 688 P.2d at 226 ("It is the hearing officer, rather than the board, who 'is empowered to assess credibility, weigh conflicting evidence and draw factual inferences from the testimony and exhibits introduced by the parties.'" (quoting *Ricci,* 627 P.2d at 1119)); *see also Blaine,* 748 P.2d at 1286–87 ("The function of the hearing officer is to review the evidence and testimony, to assess the credibility of the witnesses and to weigh conflicting evidence, [and] to draw reasonable inferences from the facts. . . .").

¶ 49 Second, the Board did not mention the following additional undisputed evidentiary facts in its Order of Dismissal: (1) when the District placed Ritzert on leave, Air Academy's principal told her she would not be returning to work at the school; (2) on May 10, 2012, the Assistant Superintendent for Human Resources for the District asked Ritzert to resign; (3) he asked her again two days later; (4) he also told her that the Board would dismiss her at its upcoming June meeting; and (5) the District did not show any interest in having Ritzert return to work until it learned about her employment with Falcon, which was after the date on which teachers were required to report for work in the District. By omitting these facts and focusing solely on Ritzert's refusal to comply with the District's order, the Board failed to meet the basic standard of assessing the reasonableness of a district's directive on a case-by-case basis. The Board's reasoning focused solely on the legitimacy of the District's authority to issue the order but insulated the District from having to prove the order was reasonable under the circumstances. The Board's inadequate consideration of the full extent of the hearing officer's findings leads us to conclude that it did not properly assess the reasonableness of the District's order and that its action was arbitrary and capricious.

¶ 50 Upholding the Board's order here would allow a school district to place a teacher on indefinite administrative leave, advising her that she will return from leave only if she prevails in the dismissal proceeding. If the teacher gets a job in another district while she awaits the proceeding's outcome, the first district can order the teacher back to work merely to force her to choose which contractual obligation to honor. If the teacher chooses not to return, under the Board's reasoning, the district avoids any accountability for its conduct towards the teacher, including its manipulation of the situation to trigger the insubordination used to justify the teacher's dismissal. This would nullify

the statutory grounds for dismissal designed to protect teachers from arbitrary and capricious termination, thereby contravening a fundamental purpose of the dismissal procedures provided for under TECDA.

### III. Conclusion

¶ 51 We hold that under TECDA whether a school district's order is reasonable is a finding of ultimate fact within the discretion of the governing school board. Still, that finding must be fully warranted by the hearing officer's evidentiary findings of fact. Thus, a board must assess reasonableness on a case-by-case basis after consideration of all the facts found by the hearing officer. Because the Board abdicated that responsibility here, we conclude that its decision to dismiss Ritzert for insubordination on these facts was arbitrary and capricious. Therefore, we reverse the judgment of the court of appeals and remand this case to the Board to reinstate Ritzert.[7]

JUSTICE COATS dissents, and JUSTICE EID and JUSTICE MÁRQUEZ join in the dissent.

JUSTICE COATS, dissenting.

¶ 52 I agree wholeheartedly with the majority's conclusion that the reasonableness of the Assistant Superintendent's order for Ritzert to come back to work was a matter of ultimate fact, as to which the hearing officer's finding was not entitled to deference. For that very reason, however, I would uphold the Board's finding of insubordination and its order of dismissal.

¶ 53 Although the majority's holding is couched as a failure of the Board to justify its finding of ultimate fact in terms of the hearing officer's evidentiary findings, I believe this formulation of the problem simply serves to obscure the legal conclusion upon which that holding actually rests. The Board's resolution did not contradict or run counter to any relevant evidentiary finding by the hearing officer. In fact, there has never been the slightest dispute about the underlying historical facts. Notwithstanding its expansive discussion of procedure, and the respective roles of the Board and hearing officer, the majority conclusorily announces, in the final paragraph of its analysis and without citation to authority or explanation of its reasoning, the interpretation of law upon which its rationale actually rests—that permitting a teacher's dismissal for failing to return to work as ordered, after being placed on paid administrative leave and told that the district would seek her dismissal, "would nullify the statutory grounds for dismissal designed to protect teachers from arbitrary and capricious termination." Maj. op. ¶ 50. Because I could not more emphatically disagree with this proposition, I respectfully dissent.

¶ 54 Surely there can be no dispute that by refusing to teach as ordered, in the district for which she was being paid to teach, Ritzert was in flagrant breach of the central condition of her employment. The hearing officer, nevertheless, found it unreasonable for the District to order her to fulfill her contractual obligation, for the reason that District officials hoped she would refuse and provide them with grounds for her dismissal. This finding—that the order for Ritzert to return to teaching was a "pretext"—is the "evidentiary finding" as to which the majority considers the Board's dismissal order to be in conflict, or "contrary." Largely buried in the folds of its opinion, however, is its conclusory answer to the critical question: whether the District's motive for demanding that Ritzert comply with her contract was at all relevant to the reasonableness of its concededly contractually authorized demand.

¶ 55 Although use of the term "pretext" to describe the District's actions appears questionable, there seems to be no dispute that upon learning Ritzert had entered into two conflicting teaching contracts, both of which she could not possibly fulfill, the District deliberately forced her to choose which she would keep and which she would breach. In the absence of an anticipatory breach by the District, impossibility, or frustration of com-

---

7. We decline to reach the second issue, which concerns whether a teacher in Ritzert's position may offer to accept the difference in pay between her salary from the district seeking her dismissal and her salary in the second district to mitigate her damages while she awaits the resolution of the dismissal charges. This is a question of policy better resolved by the General Assembly.

pliance for which Ritzert bore no fault, or some other contractual basis for relieving her of her duty to comply, I think it clear that any hope the District may have harbored that she would herself provide the grounds for her dismissal was simply beside the point. There has never been a finding, and Ritzert herself does not assert, that she had a right to teach that was violated by putting her on fully paid administrative leave, or that the District violated the terms of her employment by notifying her of its intent to pursue the very dismissal procedure contemplated by statute. Should the majority intend in any way that the District repudiated the employment contract or otherwise made it impossible or unnecessary for Ritzert to fulfill her contractual obligations, it certainly does not indicate as much or provide the least support for such a determination.

¶ 56 Quite the contrary, the majority purports to distinguish the legality, or "legitimacy," maj. op. ¶ 49, of the Assistant Superintendent's order for Ritzert to return to teaching from its "reasonableness," faulting the Board for addressing only the former and not the latter. The necessary implication of this distinction is that despite being justified in demanding that Ritzert return to teaching as a contractual matter, the District's demand that she comply with her contractually enforceable obligation may nevertheless have been unreasonable. In fact, in its final paragraph (notwithstanding its ostensible reliance on a failure of process), the majority effectively declares it to be unreasonable to require a teacher to return to work after putting her on paid leave and advising her that the district will seek her dismissal, without giving her sufficient time to fulfill another teaching contract, into which she entered as a hedge against the eventual loss of her dismissal challenge.

¶ 57 This reasoning strikes me as leaving the majority in the uncomfortable, if not positively fantastical, position of upholding Ritzert's right to retain her job with one district, despite not only refusing a contractually justified order to teach for that district but, in fact, electing to teach for another district in its place. I consider this position

so facially flawed and contrary to fundamental principles of contract law as to require no further demonstration of error. I consider it patent that to merely articulate the majority's rationale is, at one and the same time, to refute it.

¶ 58 I therefore respectfully dissent.

I am authorized to state that JUSTICE EID and JUSTICE MÁRQUEZ join in this dissent.